[No. A076689. First Dist., Div. Four. Sept. 30, 1997.]

LOUIS H. RAWSON, Plaintiff and Appellant, v.
TOSCO REFINING COMPANY, Defendant and Respondent.

### COUNSEL

Davis, Cowell & Bowe, Richard G. McCracken and Michael T. Anderson for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Christopher J. Martin and Susan B. Burr for Defendant and Respondent.

### OPINION

**POCHÉ, Acting P. J.**—Plaintiff, Louis H. Rawson, appeals from a judgment entered on a motion for summary judgment in favor of defendant, his

employer, Tosco Refining Company (Tosco). Rawson objects to a wage order of the Industrial Welfare Commission (Cal. Code Regs., tit. 8, § 11010, subd. 3(A); Wage Order No. 1-89) which permits him as a member of a collective bargaining unit that has a qualifying agreement with Tosco on overtime pay rates to be paid less than the order would require him to be paid were he not subject to such a collective bargaining agreement on overtime pay. (Cal. Code Regs., tit. 8, § 11010, subd. 3(F).)

Under the wage order employees required to work more than twelve hours in any workday or for hours beyond eight worked on the seventh day of a workweek are to be paid double their regular rate of pay. (Cal. Code Regs., tit. 8, § 11010, subd. 3(A).)[1] Rawson sought to recover the difference between the double time pay required by the wage order and the time and half pay provided for by his collective bargaining agreement.[2]

## Discussion

Tosco's motion for summary judgment was granted on undisputed facts. Therefore the sole question before the trial court and before this court is a question of law. (*Bashi* v. *Wodarz* (1996) 45 Cal.App.4th 1314, 1318 [53 Cal.Rptr.2d 635].) ▮ What is in dispute is whether the overtime pay provisions in California Code of Regulations, title 8, section 11010, subdivision 3(F) of the wage order are valid as a collectively bargained for opt-out from the state's wage scheme or are infirm because they impermissibly burden Rawson's right to collective bargaining under the National Labor Relations Act (NLRA or the Act). (29 U.S.C. § 151 et seq.) California Code of Regulations, title 8, § 11010, subdivision 3(F) provides that "this section shall not apply to any employee covered by a collective bargaining agreement if said agreement provides premium wage rates for overtime work and a cash wage rate for such employees of not less than one dollar ($1.00) per hour more than the minimum wage." Rawson argues here, as he did below, that this opt-out provision is infirm because it has denied him, as an

---

[1] Title 8, California Code of Regulations, section 11010, subdivision (3)(A) provides in pertinent part: "Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than: [¶] (1) One and one-half (1-1/2) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including twelve (12) hours in any workday, and for the first eight (8) hours worked on the seventh (7th) day of work; and [¶] (2) Double the employee's regular rate of pay for all hours worked in excess of twelve (12) hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) day of work in any workweek."

[2] Rawson's first amended complaint, styled as a class action, consists of a first cause of action for failure to pay overtime wages at the rate established by the work order and a second cause of action alleging a violation of Business and Professions Code section 17200 for that failure.

employee whose collective bargaining agreement provides lower wage rates, the full protection the state otherwise accords employees who are not covered by collective bargaining agreements and therefore must receive double pay under the wage order.

## Preemption

In evaluating a claim of preemption a state regulation will be sustained unless it conflicts with federal law, stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the federal law, or from the totality of circumstances it would appear Congress had sought totally to occupy the field. (*Metropolitan Life Ins. Co.* v. *Massachusetts* (1985) 471 U.S. 724, 747-748 [105 S.Ct. 2380, 2393, 85 L.Ed.2d 728]; *Brown* v. *Hotel Employees* (1984) 468 U.S. 491, 501 [104 S.Ct. 3179, 3185, 82 L.Ed.2d 373].)

Rawson's preemption claim is that the provisions in California Code of Regulations, title 8, section 11010, subdivision 3(F), which permit a reduced overtime wage if collectively bargained for, penalize exercise of collective bargaining rights granted him by the NLRA. He relies upon decisions of the United States Supreme Court which have held it impermissible for a state to withdraw a benefit from an employee who was engaging in practices otherwise protected and encouraged by the Act. Thus a state may not withhold unemployment benefits from an employee because she has filed a charge of unfair labor practices with the National Labor Relations Board. (*Nash* v. *Florida Industrial Comm'n.* (1967) 389 U.S. 235, 239 [88 S.Ct. 362, 366, 19 L.Ed.2d 438].) Nor may it decline to enforce a state law requiring immediate payment of all wages owed upon termination of employment merely because the employee is subject to a collective bargaining agreement which contains an arbitration provision. (*Livadas* v. *Bradshaw* (1994) 512 U.S. 107, 117 [114 S.Ct. 2068, 2074-2075, 129 L.Ed.2d 93].)

In *Livadas* the court addressed certain provisions in state and federal laws which draw distinctions between union and nonunion represented employees and noted that "virtually all" were alike in "that union-represented employees have the full protection of the minimum standard, absent any agreement for something different." (*Livadas* v. *Bradshaw, supra,* 512 U.S. at p. 131 [114 S.Ct. at p. 2082].) The court then noted that its holding "should cast no shadow on the validity of these familiar and narrowly drawn opt-out provisions." (At p. 132 [114 S.Ct. at p. 2082].)

Obviously, the question before us is whether California Code of Regulations, title 8, section 11010, subdivision 3(F) is such a valid opt-out provision which is not preempted. The wage order does indeed provide exactly

the protection described in the opt-out provisions described in *Livadas*. It provides to union-represented employees the same protections it accords to nonunion-represented employees, unless their collective bargaining agreement provides for a different wage scheme.[3] An identically worded provision in another California wage order applicable to broadcast employees has been upheld against a preemption claim by the Ninth Circuit as precisely the sort of provision discussed with approval in *Livadas*. (*National Broadcasting Co., Inc.* v. *Bradshaw* (9th Cir. 1995) 70 F.3d 69, 71; Cal. Code Regs., tit. 8, § 11110, subd. 3(F); Wage Order No. 11-80.)

Here, Rawson, did not relinquish his right to double pay for certain overtime work merely by being an employee covered by a collective bargaining agreement. His rights to the state-mandated double time pay were relinquished because his union and his employer expressly agreed to a rate of overtime pay which met at least the minimum requirements imposed by California Code of Regulations, title 8, section 11010, subdivision 3(F). (See *Livadas* v. *Bradshaw*, *supra*, 512 U.S. at p. 131 [114 S.Ct. at p. 2082].)

Rawson's claim is essentially the employee corollary of that unsuccessfully advanced by an employer in *Fort Halifax Packing Co.* v. *Coyne* (1987) 482 U.S. 1 [107 S.Ct. 2211, 96 L.Ed.2d 1]. In that case Maine law provided for a one-time plant closing severance payment of one week for every year of employment for any employee without " 'an express contract providing for severance pay.' " (*Id.* at p. 4, fn. 1 [107 S.Ct. at p. 2213].) The employer argued the effect of the state law was to undercut its ability to resist union demands for severance pay and thus to impermissibly burden its freedom to collectively bargain for the terms and conditions of employment. (*Id.* at pp. 19-20 [107 S.Ct. at p. 2222].) The Supreme Court rejected the notion that a state-mandated minimum labor standard undercuts collective bargaining under the Act. It noted that both employers and employees come to bargaining with certain state-granted rights which form a backdrop to their negotiations. (*Id.* at p. 21 [107 S.Ct. at pp. 2222-2223].) In short, preemption is not required merely because "a state statute pertains to matters over which the parties are free to bargain. . . ." (*Ibid.*)

Rawson's objection merely comes from the other side of the bargaining table. The impact of California Code of Regulations, title 8, section 11010, subdivision 3(F) here is no different. Absent a negotiated provision in the collective bargaining agreement (a provision which in this instance also must meet certain minimum standards), an employee covered by that agreement

---

[3]Moreover, the collective bargaining agreement must itself meet two criteria to supplant the wage scheme of Wage Order No. 1-89. It must provide both a premium wage for overtime work and an hourly cash wage of at least $1 above the minimum wage.

will be entitled to the wage order's rate of overtime pay. On its face neither subdivision 3(F) nor the Maine law prohibits negotiated overtime pay or severance pay which is less than the state-mandated minimum for employees who lack a contractual agreement on the subject. We cannot say that subdivision 3(F) constitutes an impermissible intrusion into the collective bargaining process which results in its preemption by the Act.

## Waiver

Finally, Rawson argues California Code of Regulations, title 8, section 11010, subdivision 3(F) is infirm because it does not require the collective bargaining agreement to contain a "clear and unmistakable waiver" of his state law rights as an employee to double time pay. The simple answer is that the issue never arises in this case.

In *Lingle* v. *Norge Division of Magic Chef, Inc.* (1988) 486 U.S. 399 [108 S.Ct. 1877, 100 L.Ed.2d 410], the Supreme Court held that a state law claim for retaliatory discharge was a claim independent of a collective bargaining agreement and was therefore not preempted under the principle that federal law will be the basis for interpreting such agreements. (*Id.* at p. 407 [108 S.Ct. at p. 1882].) In a footnote the court declined to reach the related issue of whether a union may waive its members' individual, nonpreempted state law rights. (*Id.* at p. 409, fn. 9 [108 S.Ct. at p. 1883].) Significant for our purposes, however, is the fact that in *Lingle*, state law expressly provided that the parties to a collective bargaining agreement could not agree to waive the state's prohibition against retaliatory discharge. More recently, in *Livadas*, the Supreme Court did no more than note that the question was not before it whether plaintiff's union had "sought or purported to bargain away" her statutory right to immediate payment of all wages upon termination—a right which may not be "contravened or set aside by a private agreement" under California law. (*Livadas* v. *Bradshaw*, *supra*, 512 U.S. at p. 125 [114 S.Ct. at p. 2079]; Lab. Code, § 219.)[4]

Rawson cites no California statute which prohibits contractual agreements for overtime pay rates lower than those otherwise established by wage orders. Absent such a statutory bar to this overtime agreement we need not reach the question of whether California Code of Regulations, title 8, section 11010, subdivision 3(F) must include a requirement of clear and unmistakable waiver of a nonexistent statute's protections.

---

[4]Labor Code section 219 provides in pertinent part: "[N]o provision of this article can in any way be contravened or set aside by a private agreement, whether written, oral, or implied."

*Disposition*

The judgment is affirmed.

Reardon, J., and Hanlon, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 23, 1997. Mosk, J., was of the opinion that the petition should be granted.