Filed 5/2/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| HOWARD CHOATE et al., | 2d Civil No. B239160 |
| Plaintiffs and Respondents, | (Super. Ct. No. 1336975) |
| | (Santa Barbara County) |
| v. | |
| CELITE CORPORATION, | |
| Defendant and Appellant. | |

An employer in California must immediately pay a terminated employee for all of his "vested vacation time" unless the union representing that employee has negotiated a collective bargaining agreement that "otherwise provide[s]." (Labor Code, §§ 227.3, 201.)[1] We hold that a collective bargaining agreement "otherwise provide[s]" and thereby abrogates an employee's statutory right under section 227.3 to immediate payment for vested vacation time only if the agreement clearly and unmistakably waives that right. Because the agreement in this case lacked this clarity, Celite Corporation (Celite) was required to immediately pay terminated employees for all their vested vacation time. We nevertheless reverse the trial court's judgment imposing waiting time penalties because Celite's nonpayment was not "willful."

---

[1] Unless otherwise indicated, all statutory references are to the Labor Code.

*FACTS AND PROCEDURAL HISTORY*

Celite mines and manufactures diatomaceous earth in Lompoc, California.  International Chemical Workers Union/C-UFCW Local 146-C (Union) represents Celite's employees.  Under the collective bargaining agreements in effect between 2003-2007 and 2007-2010 (the Agreements), Celite granted its employees between one and five weeks of vacation annually.  Each January, Celite calculated a yearly "vacation allotment" based on each employee's length of employment and the number of hours they worked the year before.

Under the Agreements, employees terminated from Celite were entitled to "receive whatever vacation allotment is due them upon separation."[2]  For 25 years, both Celite and the Union understood this provision to refer to the "vacation allotment" as defined above.  Accordingly, Celite paid terminated employees for the vacation time already allotted to them for the year of their termination, but did not pay them the vacation time they had accrued toward the *next year's* allotment.

Howard Choate (Choate), Billy Henry (Henry), and Leroy Stricklin (Stricklin) (collectively, Plaintiffs) worked for Celite until they were laid off on March 1, 2007.  Celite immediately paid Plaintiffs their "vacation allotment" for 2007, but did not pay them for vacation time they had accrued toward January 2008's allotment between January 1 and March 1, 2007.

Plaintiffs thereafter filed a class action against Celite seeking (1) the pro rata portion of the January 2008 "vacation allotment" they had earned while employed between January 1 and March 1, 2007, pursuant to section 227.3 (pro rata vacation time); (2) thirty days of salary, as waiting time penalties pursuant to section 203, because Celite had "willfully" refused to pay them immediately for the pro rata vacation time; and

---

[2] This is the language from the 2007-2010 Agreement.  The 2003-2007 Agreement entitled separated employees to "receive whatever vacation allotment due within the calendar year."   The difference in language was not substantive.

(3) damages arising from these violations, which they allege violated the unfair competition law, Business and Professions Code section 17200.[3]

The parties made cross-motions for summary adjudication based on stipulated facts. The trial court denied summary adjudication of Plaintiffs' vacation pay and unfair competition claims.

The court granted summary adjudication to Plaintiffs on their waiting time penalties claim. The court concluded that section 227.3 obligated Celite to pay Plaintiffs for their pro rata vacation time immediately upon their termination unless the Agreements "otherwise provided." The court ruled that the Agreements did not waive Plaintiffs' rights to the pro rata vacation time in clear and unmistakable terms. The court further determined that Celite had acted willfully in refusing to pay Plaintiffs because Celite's legal duty to do so was clear and because Celite acted unreasonably in believing that the Agreements' implicit waiver of these rights was valid. The court also rejected Celite's argument that Plaintiffs' claims were preempted by the Labor Management Relations Act (LMRA). The court accordingly concluded that Celite owed waiting time penalties.

Plaintiffs dismissed their unpaid vacation claim because Celite eventually paid them for the pro rata vacation time, and dismissed their unfair competition claim to expedite appellate review. The parties also stipulated to class certification for the waiting time penalties claim. The court subsequently entered judgment for Plaintiffs.

*DISCUSSION*

Celite argues that it should not be held liable for waiting time penalties because (1) it never owed Plaintiffs the pro rata vacation time in the first place; (2) even if it did, it did not "willfully" refuse to pay Plaintiffs because it reasonably believed the Agreements had waived Plaintiffs' right to that pay; and (3) Plaintiffs' claims are preempted by the LMRA in any event.

---

[3] The complaint included a second group of plaintiffs, but the parties agreed to sever and stay those plaintiffs' claims pending this appeal.

3

I. *Celite Owed Plaintiffs Pro Rata Vacation Time*

Celite contends that the Union waived Plaintiffs' statutory right under section 227.3 to the pro rata vacation time. As evidence of this waiver, Celite notes that (1) the Agreements discuss what vacation pay terminated employees are to receive and limit that pay to the "vacation allotment" for the year of termination; and (2) consistent with the Agreements, Celite had for decades paid terminated employees only the "vacation allotment" without any objection from the Union. Because section 227.3 empowers a union to waive its members' rights to "vested vacation time" by entering into a collective bargaining agreement that "otherwise provide[s]" (§ 227.3), Celite's arguments present two questions for review: How clearly must a waiver of rights under section 227.3 be, and do the Agreements here meet that standard? We review both questions de novo. (*Coito v. Super. Ct.* (2012) 54 Cal.4th 480, 488 [issues statutory construction reviewed de novo]; *Roybal v. Governing Bd. of Salinas City Elem. Sch.* (2008) 159 Cal.App.4th 1143, 1148 [application of law to undisputed facts reviewed de novo].)

A. *A waiver of rights under section 227.3 must be clearly and unmistakably stated in the collective bargaining agreement*

Once an employer makes vacation pay a term of employment, section 227.3 entitles terminated employees to immediate payment for any "vested vacation time" unless a collective bargaining agreement "otherwise provide[s]." (§ 227.3, 201; cf. *Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 784 (*Suastez*) [if employer does not offer vacation time, § 227.3 does not apply]; *Boothby v. Atlas Mechanical, Inc.* (1992) 6 Cal.App.4th 1595, 1602 [if employer "caps" vacation accrual, § 227.3 does not override that cap].)[4] The parties disagree on what our Legislature meant when it required collective bargaining agreements to "otherwise provide[]": Celite contends that a waiver of the right to payment under section 227.3 may be inferred from the totality of the circumstances, while Plaintiffs defend the trial court's ruling that any waiver must be

---

[4] If the employee quits, the employer must pay within 72 hours. (§ 202.)

clearly and unmistakably stated in the collective bargaining agreement. We agree with the trial court that section 227.3 requires any union waiver of its members' statutory right to payment under section 227.3 be made clearly and unmistakably.

Three canons of statutory construction dictate this conclusion. First, we are required to construe statutes to avoid absurd consequences. (*In re Greg F*. (2012) 55 Cal.4th 393, 406.) As it stands now, a collective bargaining agreement validly waives a union member's right to litigate federal or state claims in a judicial forum only if the waiver is clear and unmistakable. (*Vasquez v. Super. Ct*. (2000) 80 Cal.App.4th 430, 434-435 (*Vasquez*) [under state law]); *14 Penn Plaza v. Pyett* (2009) 556 U.S. 247, 272, 274 [under federal law].) The same is true for waivers of substantive rights conferred by federal statute (*Metropolitan Edison Co. v. NLRB* (1983) 460 U.S. 692, 708 (*Metropolitan Edison Co.*) and for waivers of public employee's rights conferred by California statute (*Oakland Unified Sch. Dist. v. Public Employee Relations Bd.* (1981) 120 Cal.App.3d 1007, 1011).

Against this backdrop, the totality of the circumstances standard proffered by Celite leads to absurd results. Because the totality of the circumstances standard looks to evidence (such as mutual understanding and past practices) beyond the collective bargaining agreement, this standard by definition empowers courts to infer a waiver when the agreement does not clearly and unmistakably memorialize one. Consequently, the totality of the circumstances standard would make it easier for unions to waive their members' substantive rights than members' procedural right to litigate those substantive rights in a judicial forum; easier to waive state statutory rights than federal statutory rights; and easier to waive private sector employees' rights than public employees' rights. Celite offers no justification for these counter-intuitive and irrational outcomes. Importantly, these outcomes are avoided entirely if the waiver of union members' statutory rights under state law—like the waivers of the other rights described above—must be clear and unambiguous.

Second, we construe ambiguities in labor statutes to be more (rather than less) protective of employees' rights. (*Kirby v. Immoos Fire Protection, Inc.* (2012) 53

5

Cal.4th 1244, 1250.)  Requiring greater clarity to effect a waiver of employees' rights is more protective of those rights.

Lastly, we try to harmonize state and federal law.  (*Independent Union of Public Serv. Employees v. County of Sacramento* (1983) 147 Cal.App.3d 482, 488.)  As noted above, waiver of federal statutory rights must be clear and unambiguous. (*Metropolitan Edison Co.*, *supra*, 460 U.S. at p. 708.)  This counsels in favor of requiring the same degree of clarity for waivers of state statutory rights.

Celite proffers three reasons why implied waivers suffice under section 227.3.  First, Celite relies on precedent.  Celite contends that language in *Livadas v. Bradshaw* (1994) 512 U.S. 107 (*Livadas*) draws a distinction between waiving the right to waiting time penalties under sections 201 and 203 and the right to vested vacation pay under section 227.3, and only requires clear and unmistakable waivers for the former. (*Livadas*, *supra*, at p. 128.)  *Livadas* contrasted sections 201 and 203 from section 227.3, but did so to illustrate that section 227.3's plain language empowers a union to waive its protections whereas section 219 prohibits waiving the protections of sections 201 and 203.  *Livadas* said nothing about what the waiver standard under section 227.3 should be. Indeed, the court only mentioned the clear and unmistakable waiver standard with regard to sections 201 and 203 while commenting on the clarity of the waiver the court would require before it would consider whether federal common law preempted section 219's prohibition of such a waiver.  (*Livadas*, *supra*, at p. 125, citing *Lingle v. Norge Div. of Magic Chef* (1988) 486 U.S. 399, 409-410, fn. 9 (*Lingle*).)

Celite also cites *Firestone v. Southern California Gas Company* (9th Cir. 2000) 219 F.3d 1063 (*Firestone*) and *Rawson v. Torso Refining Co.* (1997) 57 Cal.App.4th 1520 (*Rawson*).  Although *Firestone* could be read to support an implied waiver standard, both *Firestone* and *Rawson* addressed the waiver of a right conferred by *wage order* (*Firestone*, *supra*, at p. 1066; *Rawson*, *supra*, at p. 1525)—not a waiver of *statutory* rights.

Second, Celite contends that the plain language of section 227.3 mandates an implied waiver standard because it requires only that a collective bargaining

6

agreement "otherwise provide[]."  Requiring a clear and unmistakable waiver, Celite reasons, rewrites the statute to require that an agreement "otherwise *expressly* provide[]."  We disagree.  By their very nature, waivers may be express or implied.  In determining which type of waiver the Legislature intended to codify in section 227.3, we are not rewriting the statute; we are construing it.  (Accord, *Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 585 ["whether or not implied waiver [rather than express waiver] applies to mediation confidentiality is ultimately an issue of statutory interpretation"].)

Third, Celite suggests that section 227.3 was designed to give the parties to a collective bargaining agreement a freer hand to negotiate because section 227.3—unlike sections 512, 514, 554, 750.5 and 2810.5—does not condition a waiver of employee's rights upon the mandatory adoption of alternative contractual protections.  From this, Celite extrapolates that section 227.3 must also give the parties greater flexibility in effectuating a waiver in the first place.  This extrapolation is flawed.  That section 227.3 grants employers and unions greater latitude in defining alternative protections says nothing about the degree of clarity with which they must invoke that latitude.

B.  *The Agreements do not waive Plaintiffs' rights under section 227.3 in clear and unmistakable terms*

To be clear and unmistakable, a waiver must do more than speak in "'[b]road, general language."  (*Vasquez*, *supra*, 80 Cal.App.4th at p. 435.)  It must be specific, and mention either the statutory protection being waived or, at a minimum, the statute itself.  (Accord, *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1208.)  The Agreements here neither mention pro rata vacation pay nor cite section 227.3.  Celite points out that the Agreements "affirmatively address" vacation payments upon termination.  But discussing a topic while at the same time saying nothing about the statutory right at issue does not affect a clear and unmistakable waiver of that right.  The trial court correctly concluded that this was insufficient to constitute a waiver in clear and unmistakable terms.

7

## II. *Celite Did Not Act "Willfully" In Not Paying Plaintiffs For Their Accrued Vacation Time*

Celite argues that the trial court erred in concluding that Celite willfully refused to pay Plaintiffs for their pro rata vacation time. We review the trial court's ruling for substantial evidence. (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1202.)

Section 203 entitles a terminated employee to "waiting time penalties" of up to 30 days' wages if the employer "willfully fails to pay" the employee any outstanding wages immediately upon termination. (§ 201.) To act "willfully," an employer need not act with a "deliberate evil purpose." (*Barnhill v. Robert Sanders & Co.* (1981) 125 Cal.App.3d 1, 7.) Rather, the employer need only "intentionally fail[] or refuse[] to perform an act which was required to be done. [Citation.]" (*Ibid.*, emphasis removed.) However, an employer's reasonable, good faith belief that wages are not owed may negate a finding of willfulness. (8 Cal. Code Regs., § 13520, subd. (a); *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.* (2002) 102 Cal.App.4th 765, 782.)

The trial court's ruling that Celite acted willfully was based in part on the premise that Celite's misunderstanding of the law governing waiver—even though shared by the Union—was unreasonable. This premise necessarily assumes that section 227.3 requires any waiver to be clear and unmistakable. Although we agree with the trial court that this is the appropriate standard, this is the first case to define the standard for waiver under section 227.3. Plaintiffs argue that *Saustez* decided this issue, but it did not. (*Saustez*, *supra*, 31 Cal.3d 774.) Celite's good faith reliance on a different waiver standard was accordingly reasonable, particularly in light of the language in *Firestone* supporting that standard. (*Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, 325-326 [position taken where law is undecided can be reasonable].) That Celite's position did not prevail does not mean that its position was unreasonable. (8 Cal. Code Regs., § 13520.)

By itself, our ruling would ordinarily call for a remand for further proceedings. However, the parties have stipulated that they had a longstanding practice

of not paying pro rata vacation time to terminated employees.  The parties further stipulated that Celite otherwise acted in good faith.  Bound as we are by these stipulations, the outcome of a remand is a foregone conclusion.  Accordingly, we order that summary adjudication be entered for Celite on the waiting time penalties claim.

### III.  *Plaintiffs' Claims Are Not Preempted By Federal Law*

Celite alternatively argues that Plaintiffs' claims are preempted by section 301 of the LMRA, 29 United States Code section 158(a).  Whether a state cause of action is preempted by section 301 is a question of federal law we review de novo.  (*Allis-Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 214, abrogated on other grounds in *14 Penn Plaza LLC v. Pyett*, *supra,* 556 U.S. 247.)

The LMRA preempts state actions when they are (1) based upon a right conferred by a collective bargaining agreement; or (2) otherwise "substantially dependent [upon an] analysis" of such an agreement.  (*Lingle*, *supra*, 486 U.S. at p. 413, fn. 10; *Caterpillar, Inc. v. Williams* (1987) 482 U.S. 386, 394; *Firestone*, *supra*, 219 F.3d at p. 1066.)  A claim is "substantially dependent [upon an] analysis" of an agreement if it "requires . . . interpretation" of the agreement.  (*Lingle*, *supra*, at p. 413; *Firestone*, *supra*, at p. 1066.)  Due in part to the presumption against federal preemption (*Fort Halifax Packing Co. v. Coyne* (1987) 482 U.S. 1, 21), the term "interpret" is "defined narrowly" (*Balcorta v. Twentieth Century-Fox Film Corp.* (9th Cir. 2000) 208 F.3d 1102, 1108).  An action will not be preempted just because the court, to resolve the state claim, needs to "consider," "refer to," or "apply" one or more terms of a collective bargaining agreement.  (*Ibid.*; *Soremekun v. Thrifty Payless, Inc.* (9th Cir. 2007) 509 F.3d 978, 991; *Burnside v. Kiewit Pac. Corp.* (9th Cir. 2007) 491 F.3d 1053, 1060.)  Only if the court must "construe" disputed terms of the agreement will the claim be preempted.  This rule of preemption empowers the federal courts to develop and apply a uniform body of federal common law governing the interpretation of collective bargaining agreements, which is thought to encourage collective bargaining.  (*Lingle*, *supra*, at pp. 403-404, fn. 3, 407; *Lividas*, *supra*, 512 U.S. at p. 122; *Allis-Chalmers Corp.*, *supra*, 471 U.S. at pp. 210-211.)

Plaintiffs' claim for working time penalties under sections 227.3 and 203 is not preempted. That claim is based solely on state law. More to the point, resolving that claim only requires a court to ascertain whether the Agreements contain clear and unmistakable language waiving Plaintiffs' rights to "vested vacation time." Checking to see whether the Agreements affirmatively mention section 227.3 or its protections does not entail interpretation. (Accord, *Burnside*, *supra*, 491 F.3d at p. 1060 [assessing whether collective bargaining agreement contained a waiver in clear and unmistakable terms; no "interpretation" and no preemption].) Celite argues that a more in-depth inquiry into the parties' mutual intent and past practices would require interpretation, but the clear and unmistakable waiver standard we have adopted makes such probing inquiry irrelevant and hence unnecessary.

## DISPOSITION

The judgment is reversed and remanded. The trial court is ordered to grant summary adjudication to Celite on the waiting time penalties count (count 2). Costs on appeal are awarded to Celite.

CERTIFIED FOR PUBLICATION.


HOFFSTADT, J.[*]

We concur:


GILBERT, P. J.


PERREN, J.

---

[*] (Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

10

James W. Brown, Judge

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____

Sheppard, Mullin, Richter & Hampton LLP, Jeffrey A. Dinkin and Karin Dougan Vogel for Defendant and Appellant.

Gilbert & Sackman, Robert A. Cantore and Adrian Barnes for Plaintiffs and Respondents.