Filed 12/17/24  Hudson v. Regency Air CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALEXA HUDSON, Plaintiff and Appellant, v. REGENCY AIR, LLC, Defendant and Respondent. | G062534 (Super. Ct. No. 30-2020-01143610) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, James L. Crandall, Judge. Affirmed.

Law Office of Corbett H. Williams and Corbett H. Williams for Plaintiff and Appellant.

Cone & Kassel and John A. Cone, Jr., for Defendant and Respondent.

Plaintiff Alexa Hudson was employed by defendant Regency Air, LLC (Regency Air), where she was paid a salary, worked Monday through Friday in the office, and sometimes was on call during the weekend. Following a bench trial, the trial court awarded Hudson, inter alia, overtime compensation for the hours she worked while on call. On appeal, Hudson argues the trial court should have awarded her overtime compensation for the entire time she was on call. She also argues the trial court erred in denying waiting time penalties under Labor Code section 203 (all undesignated statutory references are to this code) and denying liquidated damages under section 1194.2. We disagree and conclude the trial court did not err. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Regency Air is a private jet chartering business. From August 2018 to July 2019, Hudson worked as a finance assistant and charter sales representative at Regency Air. She was paid an annual salary of $45,000, plus $100 per charter booking. She worked at Regency Air's facility at John Wayne Airport Monday through Friday.

Hudson also occasionally was on call. Hudson's employment offer letter, which she signed, stated the following regarding on-call shifts: "As part of my job duties, I am scheduled to work an on-call shift during every other week. This was explained to me at the time I was hired. The work performed during this on-call period consists of answering the phone after business hours, and if necessary, inputting scheduling information remotely on the company iPad. The amount of actual work performed during my on-call shift varies[,] but it can range from a minimal amount of time, to as much as 15 hours per week. I understand that I will immediately notify my supervisor in writing at any time in which my on-call hours reach 15 hours in

2

any single week. [¶] When I am on[ ]call, I am not required to be at the Regency Air offices, and I am generally unrestricted as to my activities. I am free to shop, go to dinner, sleep, and generally go any place or perform my own pursuits, provided that I am sober and can receive a call and otherwise communicate on my mobile phone, and, if necessary, remotely access the company computer within a reasonable period of time. With permission from my supervisor, and at the discretion of [Regency Air,] I may also be permitted to change on-call schedules with other employees in order to permit flexibility to engage in personal activities. [¶] I understood at the time that I was hired, that performing on-call duties was part of my job requirements. I also understand and agree that my compensation is intended to include and compensate me for the estimated time I would actually work while on[ ]call in an amount up to 15 hours for each week."

In May 2020, Hudson filed her complaint against Regency Air. Hudson asserted causes of action for: (1) failure to pay minimum, straight, and overtime wages in violation of sections 510, 1194, and 1197; (2) failure to pay meal break premiums in violation of sections 226.7 and 512, subdivision (a); (3) failure to pay rest break premiums in violation of section 226.7; (4) failure to furnish wage statements consistent with the requirements of section 226; (5) failure to reimburse necessary expenses in violation of section 2802; (6) failure to timely pay all wages due upon termination in violation of sections 201, 202, and 203; and (7) unlawful, unfair, and fraudulent business practices in violation of Business and Professions Code section 17200 et seq.

In April 2022, the trial court granted summary adjudication in favor of Hudson on two issues: (1) Regency Air owed a duty to pay overtime compensation to Hudson in 2019 because she was a nonexempt employee (the trial court did not rule on whether she was such in 2018); and (2) Regency Air

3

owed a duty to reimburse Hudson a reasonable amount for her cell phone cost. The summary adjudication briefing is not in the record on appeal.

In July 2022, the case proceeded to a bench trial. Hudson testified, inter alia, an on-call shift typically, but not always, was from Saturday at 8:00 a.m. until Monday at 8:00 a.m. When Hudson was on call, calls to the Regency Air phone number would be transferred to her cell phone. She said she was expected to answer calls immediately and would have been reprimanded if she did not. Hudson stated she also had other tasks while on call, including flight tracking, communicating with pilots, monitoring and sending e-mails, and trying to book new charters (which entailed monitoring an industry service and creating quotes). She stated 15 hours was a "very conservative estimate" for how many hours she spent actively working while on call, and she estimated for an on-call day she would on average actively work from 6 to 12 to 14 hours a day.

Hudson also testified "[p]hone calls were the least time extensive part of [her] job." On direct examination, she testified calls at 3:00 a.m. were "still pretty common because of [their] east coast clients[,]" but on cross-examination, she testified a 3:00 a.m. call was "not super common" and she could specifically remember three calls that came in between midnight and 5:00 a.m. Hudson added she was "not saying there was not more, but in the seven months that [she] was on call, [she] specifically remember[ed] three."

Hudson further testified she was not required to go into the office while on call, but she believed she had to be within an hour of the airport while on call based on a conversation with Karli Swarez, another employee. Hudson said typically while on call she "stayed home the entire weekend" because she "was terrified of not having service, not being near [her] computer, of being anywhere that would make [her] miss a quote that [she]

4

had to make, a pilot having a question, or driving through a spotty part of town that didn't have service and [she] would miss an important phone call."

Regency Air called two of its employees, Swarez and Nicole Worley, to testify. Swarez testified, inter alia, she was generally unrestricted in her activities and was free to shop, go to dinner, and sleep while on call. She said she did not believe she had ever spent more than 11 hours working on a weekend on-call shift, and she could not envision a scenario where it took Hudson more than 15 hours to complete any of the tasks she was assigned while on a weekend on-call shift. Swarez further testified, while she generally would save travelling for when she was not on call, she had travelled before while on call. Swarez said she did not recall advising Hudson that Hudson had to remain within one hour of the airport while on call. However, Swarez stated there was a weekend where she was frustrated as people were calling her directly while Hudson was on call and in San Diego, and although she did not remember the details of the conversation, "it makes sense [Swarez] probably told [Hudson] she shouldn't be driving so far away, or something like that." But Swarez noted Hudson knew Swarez went places, and Swarez did not "know how [Hudson] would come to think" there was a rule on geographic limitations.

Worley testified, inter alia, she had "done many things on[ ]call, gone to many different places and been able to do all the work that is needed for on[ ]call while engaging fully in [her] personal life." She said she believed a person could do almost everything while on call as long as the person had cell phone reception and was sober. She testified she never worked more than 15 hours while on call and had never heard someone say they were required to work more than 15 hours while on call. Worley also stated, to her

5

knowledge, there is no requirement to being within one hour of the airport while on call.

In August 2022, the trial court issued its proposed statement of decision, and Hudson filed certain objections. In September 2022, the trial court issued its final statement of decision. The trial court stated, inter alia, "[t]hroughout trial, the parties presented sharply divergent versions of many of the key events and facts. The [trial] [c]ourt's findings and conclusions thus necessarily reflect its evaluation and determination of the credibility of each of the witnesses who testified." The trial court found the signed employment offer letter was a contract of employment and Hudson "was fully compensated for all her straight time hours per the employment agreement."

The trial court noted "[t]he key issue in the case is whether California law requires [Regency Air] to pay [Hudson] for all or some of her on-call time as overtime." Given the trial court's determination Hudson was nonexempt,[1] the trial court found Hudson's salary was "deemed to cover only her regular, non-overtime hours" pursuant to section 515, subdivision (d)(2), and "Regency Air cannot rely on the terms of the employment agreement it authored to avoid payment of overtime compensation."

Although the trial court found Hudson was on call for a total of 981.5 hours, it found she was "not entitled to overtime pay for 100% of the on-call time." Instead, the trial court noted it "must focus on the extent of the employer's control over the employee's activities." It further stated the employment agreement, while not controlling, "suggests the time need[ed] to

[1] As discussed, *ante*, the trial court had determined on summary adjudication Hudson was nonexempt in 2019, and it determined in its statement of decision Hudson was nonexempt in 2018. At the start of trial, Regency Air stated it would not be proceeding with an exemption defense.

perform the on-call duties ranges from 'minimal to 15 hours[,]'" the two other Regency Air employees who testified said "they spent a maximum of 11 hours per on-call shift[,]" and Hudson "admitted in her deposition that she was able to conduct nonwork and personal activities during her on[-]call shifts." Ultimately, the trial court found Hudson worked 11 hours for 10 on-call shifts and 15 hours for 9 on-call shifts in 2019, which amounted to overtime compensation of $8,197.70, and 11 hours for 8 on-call shifts in 2018, which amounted to overtime compensation of $2,856.48.

The trial court denied liquidated damages under section 1194.2 and denied waiting time penalties under section 203. The trial court also awarded $765 for unreimbursed expenses, denied Hudson's claim for damages under section 226, and ordered Hudson's counsel to calculate the interest due and file a motion for attorney fees.

In April 2023, the trial court entered judgment awarding Hudson $118,599.34, which consisted of the $11,819.18 in the statement of decision, $95,350 in attorney fees, $4,373 in prejudgment interest, and $7,057.16 in costs.

## DISCUSSION

### I.

### ON-CALL TIME

The trial court concluded Hudson was not entitled to overtime compensation for all on-call time and instead limited her overtime compensation to the amount of time she worked while on call. Hudson contends she should have been awarded compensation for all on-call time. We conclude the trial court did not err.

"It is well established that an employee's on-call or standby time may require compensation." (*Mendiola v. CPS Security Solutions, Inc.* (2015)

7

60 Cal.4th 833, 840 (*Mendiola*).) "California courts considering whether on-call time constitutes hours worked have primarily focused on the extent of the employer's control. [Citations.] Indeed, [the California Supreme Court has] stated that '[t]he level of the employer's control over its employees . . . is determinative' in resolving the issue." (*Ibid.*)[2] "Courts have identified various factors bearing on an employer's control during on-call time: '"(1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time." [Citation.]' [Citation.] Courts have also taken into account whether the '[o]n-call waiting time . . . is spent primarily for the benefit of the employer and its business.'" (*Id.* at p. 841, fn. omitted; see also *Gomez v. Lincare, Inc.* (2009) 173 Cal.App.4th 508, 523 (*Gomez*).) "[W]hen the relevant facts are not in dispute, what qualifies as hours worked is a question of law, reviewed de novo." (*Mendiola, supra,* at p. 840.) However, "[w]hether and to what extent employees are able to use on-call time for personal activities is a question of fact." (*Seymore v. Metson Marine, Inc.* (2011) 194 Cal.App.4th 361, 374, disapproved on another ground in *Mendiola, supra,* at p. 846.)

---

[2] Hudson contends, and Regency Air does not dispute, that Wage Order 4 applies here, which defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so. . . ." (Cal. Code Regs., tit. 8, § 11040, subd. (2)(K).)

In *Mendiola*, the plaintiffs were guards who provided security at construction worksites, and depending on the day, part of their work shift was spent on active patrol and the rest was spent on call while residing in a trailer at the worksite. (*Mendiola, supra,* 60 Cal.4th at p. 837.) The California Supreme Court concluded all of the guards' on-call hours were hours worked. (*Id.* at p. 841.) The Court highlighted the guards "were required to 'reside' in their trailers as a condition of employment[,]" "spend on-call hours in their trailers or elsewhere at the worksite[,]" and "were obliged to respond, immediately and in uniform, if they were contacted by a dispatcher or became aware of suspicious activity." (*Ibid.*) The Court also noted the "[g]uards could not easily trade on-call responsibilities[,]" and "[e]ven if relieved, guards had to report where they were going, were subject to recall, and could be no more than 30 minutes away from the site." (*Ibid.*) Moreover, the Court stated, "[r]estrictions were placed on nonemployee visitors, pets, and alcohol use" and "the guards' on-call time was spent primarily for the benefit of" the employer. (*Ibid.*)

Conversely, in *Gomez*, the plaintiffs' job responsibilities included transporting liquid and compressed oxygen and setting up related medical equipment in patient homes, and there also was an on-call policy. (*Gomez, supra,* 173 Cal.App.4th at p. 512.) The plaintiffs argued they were "entitled to overtime wages for the entire time they were on call during the evenings and weekends waiting for patient calls, but when they were *not* actually responding to pages telephonically or in person." (*Id.* at p. 523.) A panel of this court rejected the plaintiffs' argument, concluding the "factors favor[ed] a determination that the on-call waiting time did not unduly restrict plaintiffs' ability to engage in personal activities." (*Id.* at pp. 523–524.) As the court explained, the employer "did not impose an on-site living requirement," "did

9

not impose excessive geographic restrictions on plaintiffs[,]" and "[t]he time limits set for plaintiffs' responses to pages—30 minutes to respond by telephone and two hours to respond to a patient's home—[were] not unduly restrictive." (*Id.* at p. 524) The court also noted "[o]n-call employees were permitted to trade on-call responsibilities" and the "[p]laintiffs were provided pagers[.]" (*Ibid.*) Moreover, the court underscored the "[p]laintiffs' depositions confirmed they had engaged in some personal activities while on call; [the court did] not believe plaintiffs' unilateral decisions to avoid personal activities while on call changes the fact that they did engage in some activities and could have continued to do so." (*Ibid.*)

Here, we conclude the on-call shifts did not subject Hudson to the control of Regency Air such that all of her on-call time—as opposed to only the time she was working while on call—are compensable hours worked. Notably, there was no on-premises requirement while Hudson was on call, which is similar to *Gomez* and unlike *Mendiola*. Moreover, as the trial court found, Hudson "admitted in her deposition that she was able to conduct nonwork and personal activities during her on[-]call shifts." Hudson also was permitted to and did trade on-call shifts with other employees.

Hudson asserts the facts here are "radically different" from *Gomez* because she was expected to answer calls and respond to e-mails immediately. We are not persuaded this makes all of Hudson's on-call time

10

hours worked, notwithstanding the other factors. Indeed, as discussed, *ante*, Hudson testified calls were the "least time extensive part of [her] job."[3]

## II.

### WAITING TIME PENALTIES UNDER SECTION 203

Under section 203, subdivision (a), "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with [s]ections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." However, "[u]nder long established law, an employer cannot incur civil or criminal penalties for the willful nonpayment of wages when the employer reasonably and in good faith disputes that wages are due." (*Naranjo v. Spectrum Security Services, Inc.* (2024) 15 Cal.5th 1056, 1065 (*Naranjo II*).) Under the Division of Labor Standards Enforcement regulations, "[a] good faith dispute that any wages are due will preclude imposition of waiting time penalties under [s]ection 203." (Cal. Code Regs.,

---

[3] Hudson also contends "she was required to remain within a 1-hour drive to" the airport while on call, but the testimony on whether there was such a geographic restriction was conflicting. As Hudson did not object on the basis that the trial court omitted a finding on a geographic restriction, we infer an implied factual finding there was no geographic restriction. (See *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59–60.)

11

tit. 8, § 13520.)[4] "Courts have likewise uniformly recognized a good faith defense to penalties under section 203." (*Naranjo II, supra,* at p. 1078.) Here, the trial court denied penalties under section 203, stating "[t]he statute specifically requires the failure to pay all compensation due at the time of discharge to be willful" and Regency Air "had a good faith belief that [its] employment agreement was in compliance with the law."

As an initial matter, Hudson asserts the trial court applied the wrong test because it stated Regency Air "had a good faith belief that [its] employment agreement was in compliance with the law." We disagree. While the trial court did not use the exact words "good faith dispute," it found Regency Air "had a good faith belief that [its] employment agreement was in compliance with the law[,]" and if the compensation outlined in the employment agreement complied with the law, then Regency Air would not have owed compensation to Hudson. Additionally, some courts have referred to a good faith belief in a defense, instead of the exact words "good faith dispute," when considering willfulness. (See *Choate v. Celite Corp.* (2013) 215 Cal.App.4th 1460, 1468 ["an employer's reasonable, good faith belief that wages are not owed may negate a finding of willfulness"].) Thus, we interpret the trial court's statement as applying the proper test for willfulness and concluding there was a good faith dispute.

---

[4] "A 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist. Defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a 'good faith dispute.'" (Cal. Code Regs., tit. 8, § 13520, subd. (a).)

The trial court's ruling on a good faith dispute is reviewed for substantial evidence. (See *Naranjo v. Spectrum Security Services, Inc.* (2023) 88 Cal.App.5th 937, 946 (*Naranjo I*).) "When a party raises a substantial evidence challenge, a reviewing court begins with the "'presumption that the record contains evidence to sustain every finding of fact."' [Citation.] To overcome the trial court's factual findings, [Hudson] must "'demonstrate that there is *no* substantial evidence to support the challenged findings."' . . . . Accordingly, if . . . "some particular issue of fact is not sustained, [Hudson is] required to set forth in [her] brief *all* the material evidence on the point and *not merely* [*her*] *own evidence*. Unless this is done the error is deemed to be [forfeited]."''' (*Ibid.*)

Here, we conclude Hudson has forfeited her argument by failing to set forth all of the material evidence as to good faith as opposed to merely her own evidence. (See *Naranjo I, supra,* 88 Cal.App.5th at p. 946 [concluding plaintiff forfeited substantial evidence challenge to a finding of good faith dispute by "fail[ing] to point to *any* evidence that may have supported the trial court's finding"].) The parties litigated at the summary adjudication stage whether Hudson was exempt from the duty to pay overtime in 2019, and the trial court ultimately concluded Hudson was not exempt in 2019. But the fact the trial court decided Hudson was a nonexempt employee in 2019 at the summary adjudication stage means it found there was no triable issue of material fact; it does not automatically mean Regency Air's arguments did not constitute a good faith dispute. Moreover, Hudson's failure to sufficiently set forth Regency Air's arguments at summary adjudication is compounded by the fact Hudson has not included in the record on appeal any of the briefing or supporting materials from the summary adjudication stage. (See *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498,

13

502 [recognizing appellant "has the burden of providing an adequate record" and "[f]ailure to provide an adequate record on an issue requires that the issue be resolved against" appellant].) While the summary adjudication order shows the trial court ultimately sided with Hudson on the exemption issue, the full scope and strength of Regency Air's arguments[5] cannot be properly evaluated here without the corresponding record.[6]

## III.

### LIQUIDATED DAMAGES UNDER SECTION 1194.2

Under section 1194.2, subdivision (a), "[i]n any action under [s]ection 98, 1193.6, 1194, or 1197.1 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Nothing in this subdivision shall be construed to authorize the recovery of liquidated

---

[5] In its summary adjudication order, the trial court concluded Hudson was a nonexempt employee in 2019 because her $45,000 salary was not twice the minimum wage, which would have been $45,760 after the minimum wage increased in 2019 (Hudson did not argue her salary was less than twice the minimum wage in 2018). Regency Air apparently argued the $100 compensation Hudson received for each booking should be factored into the salary test, but the trial court disagreed.

[6] Hudson points to Regency Air's agreement at the start of trial to not proceed with an exemption defense at trial. To the extent Hudson is suggesting this conclusively demonstrates there was never a good faith dispute as to exemption, we disagree as Regency Air had already lost the issue as to Hudson's nonexempt status in 2019 at summary adjudication. Hudson also notes Regency Air's answer did not assert exemption as an affirmative defense, but based on the limited record before us, the issue of exemption clearly was part of the litigation at the summary adjudication stage.

14

damages for failure to pay overtime compensation." The trial court denied liquidated damages under section 1194.2 because it found Hudson was fully compensated for all straight time and the statute states nothing in it "shall be construed to authorize the recovery of liquidated damages for failure to pay overtime compensation." (§ 1194.2, subd. (a).)

"We independently review questions of statutory construction. [Citation.] In doing so, 'it is well settled that we must look first to the words of the statute, "because they generally provide the most reliable indicator of legislative intent." [Citation.] If the statutory language is clear and unambiguous our inquiry ends. "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." [Citations.] In reading statutes, we are mindful that words are to be given their plain and commonsense meaning. [Citation.] We have also recognized that statutes governing conditions of employment are to be construed broadly in favor of protecting employees. [Citations.] Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation.'" (*Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1250 (*Kirby*).)

Here, we conclude the trial court properly denied liquidated damages. The plain, unambiguous language of section 1194.2, subdivision (a), means liquidated damages do not apply here. As the trial court correctly recognized, section 1194.2, subdivision (a), states "[n]othing in this subdivision shall be construed to authorize the recovery of liquidated damages for failure to pay overtime compensation." "The term 'overtime compensation' ordinarily refers to the statutory and administrative obligation to pay employees one and one-half times their regular rate of pay for work in

15

excess of eight hours a day or 40 hours a week (and double the regular rate for work in excess of 12 hours a day or in excess of eight hours on any seventh day of a workweek)." (*Kirby, supra,* 53 Cal.4th at p. 1252.) That is what was at issue here—Hudson was awarded overtime compensation for the overtime hours she worked while on call. Thus, the statute's prohibition on liquidated damages for "failure to pay overtime compensation" applies.

Notwithstanding this statutory language, Hudson contends section 1194.2 must be read in conjunction with section 515, subdivision (d)(2), which provides "[p]ayment of a fixed salary to a nonexempt employee shall be deemed to provide compensation only for the employee's regular, nonovertime hours, notwithstanding any private agreement to the contrary." According to Hudson, section 515, subdivision (d)(2), means she was paid nothing for her overtime on-call hours, and thus, she should be able to recover liquidated damages for her overtime on-call hours because she was paid less than minimum wage. Hudson's argument, however, disregards the prohibition on section 1194.2, subdivision (a), applying to "failure to pay overtime compensation." Again, we conclude the plain, unambiguous meaning of that sentence encompasses the situation here, even if Hudson's salary is deemed to only cover her regular hours.

Hudson points to three federal district court cases as support for her interpretation. In *Sillah v. Command Intern. Sec. Services* (N.D.Cal. 2015) 154 F.Supp.3d 891 (*Sillah*), the district court stated, "[a]lthough the California Labor Code does not permit a plaintiff to recover liquidated damages for failure to pay overtime, [citation] a plaintiff who brings a claim for failure to pay overtime may recover liquidated damages under [section] 1194.2 if the plaintiff also shows that the plaintiff was paid less than the minimum wage." (*Id.* at p. 914.) To the extent this sentence can be

16

interpreted as supporting the application of liquidated damages to Hudson's overtime hours here, we disagree for the reasons discussed. Nor do we find persuasive for such a proposition the two other federal cases cited by Hudson—*Maravilla v. Rosas Brothers Construction, Inc.* (N.D.Cal. 2019) 401 F.Supp.3d 886, 898 and *Marquez v. NLP Janitorial, Inc.* (N.D.Cal. Feb. 15, 2019, No. 16-cv-06089) 2019 U.S.Dist. Lexis 25373, at *19—as both of those cite to *Sillah*.

DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.