Filed 12/31/18

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----


| | |
|---|---|
| CHRISTOPHER RYMEL, | C085863 |
| Plaintiff and Respondent, | (Super. Ct. No. SCV-0037893) |
| v. | |
| SAVE MART SUPERMARKETS, INC., | |
| Defendant and Appellant. | |
| JOSE ROBLES, | C085865 |
| Plaintiff and Respondent, | (Super. Ct. No. SCV-0038597) |
| v. | |
| SAVE MART SUPERMARKETS, INC., | |
| Defendant and Appellant. | |
| DAVID HAGINS, | C085886 |
| Plaintiff and Respondent, | (Super. Ct. No. SCV-0038598) |
| v. | |
| SAVE MART SUPERMARKETS, INC., | |
| Defendant and Appellant. | |


1

APPEAL from a judgment of the Superior Court of Placer County, Michael W. Jones, Judge. Affirmed.

Sheppard, Mullin, Richter & Hampton, Paul S. Cowie, Babak Yousefzadeh and Karin Dougan Vogel for Defendant and Appellant.

The Velez Law Firm, Mark P. Velez and Samantha J. Tanner for Plaintiffs and Respondents.

Plaintiffs Jose Robles, Christopher Rymel, and David Hagins sued defendant Save Mart Supermarkets, Inc., alleging various state law statutory employment claims. After successfully moving to sever, Save Mart moved to compel arbitration as to each plaintiff. The motions were heard together, and the trial court denied the motions by substantively identical orders. Save Mart timely appealed in each case. The appeals lie. (See Code Civ. Proc., § 1294, subd. (a).) We consolidated the appeals for oral argument and decision and shall affirm the orders denying the motions to compel arbitration.

## BACKGROUND

Generally, a collective bargaining agreement (CBA) providing for arbitration of employment grievances does *not* provide for arbitration of a worker's claims based on violations of state anti-discrimination or retaliation statutes, nor do federal labor relations laws preempt such claims. The trial court reasoned that the CBA at issue did not clearly and unmistakably provide for arbitration of the claims asserted. We agree and further conclude that the claims asserted by plaintiffs are not preempted by federal law, specifically section 301 of the Labor Management Relations Act, 1947 (LMRA) (29 U.S.C. § 185(a)).[1]

---

[1] The relevant language appears in section 301(a) of the bill popularly known as the Taft-Hartley Act. (Pub.L. No. 101 (June 23, 1947) 61 Stat. 156.) The provision reads: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or

2

*The Complaints*

The original complaint alleged each plaintiff had been employed as an order selector at Save Mart's Roseville Distribution Center (Rymel was also a forklift driver). Each alleged an industrial injury and torts flowing therefrom (failure to accommodate, retaliation, wrongful discharge, etc.) under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Hagins also alleged he was retaliated against after he reported a workplace safety hazard, purportedly a whistleblower violation under Labor Code section 1102.5. After the court granted Save Mart's motion to sever, each plaintiff filed a separate complaint.

Robles alleges he suffered an industrial injury to his thumb and his doctor found he could work with restrictions. He was then given degrading tasks and forced to work on the cold side of Save Mart's warehouse, although this made his hand "tense up." When he complained he was told to go to the emergency room or keep working; he went to the emergency room. He was unable to keep a medical appointment and returned to work. He was then demeaned by having to ask permission to use the bathroom and having to wear a degrading safety vest, and when he complained he was suspended without pay. He alleges statutory theories of medical condition discrimination, harassment, retaliation, and failure to take steps to prevent harassment, discrimination, and retaliation.

Hagins alleges he and another employee reported a safety violation to a manager, regarding unduly narrow aisles. The manager replied that if Save Mart had to fix the problem it would instead shut down the warehouse and fire everyone. Soon thereafter Save Mart was cited by Cal-OSHA for this violation. Four months later Hagins suffered an industrial injury. He tried to work despite the pain, and when he complained he was

without regard to the citizenship of the parties." (29 U.S.C. § 185(a).) Courts typically refer to the statutory provision as section 301, rather than by citation to the United States Code.

3

told to keep working. After he saw his doctor (who diagnosed a torn meniscus) he was placed on light duty. Save Mart then fired him. He alleges statutory theories of medical condition discrimination, retaliation, whistleblower retaliation, failure to prevent discrimination and retaliation, and termination in violation of public policies set by statute (FEHA and the workers' compensation laws).[2]

Rymel alleges he suffered an industrial injury to his back and was out on workers' compensation leave. Because he needed to return to work for financial reasons his doctor lifted his work restrictions. He found it hard to work and asked to be moved to a different position but received no reply. He was forced to perform degrading tasks and work on the cold side of the warehouse, which aggravated his back condition. When he complained he was told to go to an emergency room and have new work restrictions imposed, an impractical solution. When he complained about unduly narrow aisles, he was forced to wear a degrading safety vest. A manager taunted him with questions about his medical condition. Ultimately, Rymel was told he could not work until he was completely healed. Rymel alleges statutory theories of medical condition discrimination, harassment, and retaliation, failure to engage in an interactive process to accommodate, failure to accommodate, and failure to take steps to prevent harassment, discrimination, and retaliation, as well as termination in violation of public policy (set by FEHA and the workers' compensation laws).

*Motions to Compel Arbitration*

In each case Save Mart moved to compel arbitration, citing the California Arbitration Act (CAA) (Code Civ. Proc., § 1280 et seq.) the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) and the federal Labor Management Relations Act, section

---

[2] Our Supreme Court has held the policy or policies must be rooted in positive law, i.e., regulatory, statutory, or constitutional provisions. (*See Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 71-72.)

4

301. Save Mart alleged plaintiffs were members of Teamsters Local 150 and were employed by Save Mart under a CBA that covered the pleaded disputes. Save Mart argued that resolving the disputes would require interpretation of the CBA or would be "substantially dependent" on such interpretation, that the claims were "inextricably intertwined" with parts of the CBA, and that judicial resolution of them would infringe on the arbitration process set forth in the CBA. The CBA was tendered as an exhibit. Article 21 addresses arbitration of grievances.

As for Robles, Save Mart contended his allegations "are based largely on (1) the tasks and schedules he has been assigned to by his employer, (2) his employer's requirement for doctor's notes in response to his complaints of injury, (3) his employer's requirements to wear safety gear, and (4) a three-day suspension he was given pursuant to the strictures of his [CBA]." Save Mart alleged its defense would be that its challenged actions were governed by the CBA, prior practices between Save Mart and the Teamsters, and Save Mart's reserved management rights under the CBA. Save Mart made analogous contentions about the complaints filed by Rymel and Hagins.

Save Mart's motions included meet-and-confer e-mails wherein plaintiffs' counsel cited *Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534 (*Mendez*) and *Vasquez v. Superior Court* (2000) 80 Cal.App.4th 430 (*Vasquez*) to argue that Save Mart could not rely on the CBA to compel arbitration of FEHA claims. Save Mart did not reply with contrary authority nor did it offer any factual or other basis for distinguishing these two cases.

Plaintiffs opposed the motions, in part citing *Vasquez* and *Mendez* (which we discuss *post*) and arguing the pleaded claims did not fall within the scope of the CBA. They also cited *Wright v. Universal Maritime Service Corp.* (1998) 525 U.S. 70 (*Wright*) and argued that to overcome the presumption that statutory violations are *not* arbitrable, a CBA must be explicit on that point.

At the hearing on the motions, Save Mart argued that preemption analysis under section 301 was independent of the analysis required under the FAA and CAA and was unrelated to the arbitration provision of the CBA. Plaintiffs argued that their claims do not rely on the CBA. The trial court denied the motions to compel, finding Save Mart had not shown a valid arbitration provision covering the disputed claims existed, and plaintiffs had not waived their right to sue for state statutory claims. The trial court did not explicitly address preemption. Save Mart addresses only preemption in its initial briefing.

## DISCUSSION

### I

### *Legal Background*

The parties agree that the CBA does not *explicitly* refer to FEHA, the whistleblower statute, and the California workers' compensation laws; the CBA is silent on the California statutes plaintiffs contend Save Mart violated.

To be valid, an arbitration agreement must reflect the mutual intention of the parties that disputes between them will be resolved out of court; in doing so it operates as a waiver of the right to sue for redress of grievances. A party is not generally compelled to arbitrate a claim unless she has agreed to do so; arbitration is conducted by consent. (See, e.g., *AT&T Technologies v. Communications Workers* (1986) 475 U.S. 643, 648; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)

A CBA is an agreement between an employer and a union and thus *may* be construed to waive the rights of union members even without explicit, individual consent of each member. But such a waiver, if applied to statutory rights, must be " 'clear and unmistakable.' [Citation.]" (*Wright*, *supra*, 525 U.S. at p. 80; see *Vasserman v. Henry Mayo Memorial Hospital* (2017) 8 Cal.App.5th 236, 239 ["The [CBA] here required arbitration of claims arising under the agreement, but it did not include an explicitly

6

stated, clear and unmistakable waiver of the right to a judicial forum for claims based on statute"]; *Choate v. Celite Corp.* (2013) 215 Cal.App.4th 1460, 1465 [a CBA "waives a union member's right to litigate . . . in a judicial forum only if the waiver is clear and unmistakable"] (*Choate*).)

Ordinarily, a CBA cannot be invoked to bypass state law statutory protections. "When liability is governed by independent state law, 'the bare fact that a [CBA] will be consulted in the course of state-law litigation' " is not sufficient to invoke preemption under section 301. (*Sciborski v. Pacific Bell Directory* (2012) 205 Cal.App.4th 1152, 1164 (*Sciborski*), quoting *Livadas v. Bradshaw* (1994) 512 U.S. 107, 124 [reviewing cases and holding "These principles foreclose even a colorable argument that a claim under [California] Labor Code § 203 was pre-empted here"].)

Numerous California and Ninth Circuit cases have applied this rule to hold that claims under FEHA and similar remedial state statutes are *not* preempted by section 301 and therefore are not subject to arbitration under a CBA. This body of case law includes *Mendez* and *Vasquez*, the two cases plaintiffs' counsel cited in its meet and confer letters and to the trial court. (See, e.g., *Mendez*, *supra*, 220 Cal.App.4th at p. 544 [CBA did not require arbitration of FEHA claims; "It does not mention FEHA, it does not explicitly incorporate by reference any statutory antidiscrimination laws, and it does not contain an explicit waiver of the right to seek judicial redress for statutory discrimination causes of action"]; *id*. at p. 546 ["At a minimum, the agreement must specify the statutes for which claims of violation will be subject to arbitration"]; *Choate*, *supra*, 215 Cal.App.4th at p. 1467 [to effect a waiver the CBA "must be specific, and mention either the statutory protection being waived or, at a minimum, the statute itself"]; *Vasquez*, *supra*, 80 Cal.App.4th at pp. 432, 434-436 [similar holding where employee alleged FEHA and ADA claims and the relevant CBA did not mention those statutes]; *Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 41-49 [no preemption of claims of wrongful termination based on medical condition under FEHA and retaliation for adverse

7

testimony under Labor Code, § 230]; *Ackerman v. Western Electric Co*. (9th Cir. 1988) 860 F.2d 1514, 1517 [the statutory right not to be discriminated against because of physical handicap or medical condition is defined and enforced under state law without references to the CBA].)

Not *all* work-related state law tort claims avoid section 301 preemption. For example, in *Chmiel v. Beverly Wilshire Hotel Co*. (9th Cir. 1989) 873 F.2d 1283, the employee in part brought common law claims of wrongful termination and breach of contract. In effect, he claimed that he was entitled to greater employment protection than provided by the CBA, therefore, because "Chmiel's independent contract claim concerns a job position governed by the [CBA], it is completely preempted by section 301. [Citation.]" (*Id*. at p. 1286.) Similarly, Chmiel's tort claims based on breach of the implied covenant and fair dealing and intentional infliction of emotional distress were preempted because they placed in issue the terms of the CBA. (See *ibid*.) However, his statutory age discrimination claim was *not* preempted, because the relevant statute set forth "a nonnegotiable right" that applied "to both unionized and nonunionized workers. [Citation.]" (*Ibid.*) In other words, it was not dependent on or connected to the relevant CBA. (Cf. *Cortez v. Doty Bros. Equipment Co*. (2017) 15 Cal.App.5th 1, 13-14 [CBA clearly and unmistakably covered grievances over wage order]; *Ruiz v. Sysco Food Services* (2004) 122 Cal.App.4th 520, 529-531 (*Ruiz*) [common law defamation and related torts required interpretation of the CBA and therefore were arbitrable].)

In *Cramer v. Consol. Freightways, Inc*. (9th Cir. 2001) 255 F.3d 683, an employer installed cameras in bathrooms behind two-way mirrors to detect drug use, a misdemeanor violation of California law. Employees sued for invasion of privacy. The employer removed the matter to federal court and argued the claims were preempted by section 301 because their resolution required interpretation of the CBA. (*Id.* at pp. 688-689.) The *Cramer* court explained that "states may provide substantive rights to workers that apply without regard to a CBA; a state court suit seeking to vindicate these rights is

preempted *only* if it 'requires the interpretation of a [CBA].' " (*Id.* at p. 690, italics added.) The fact that the CBA referenced drug testing and surveillance did not insulate the employer from state law liability, but was merely an effort to use the CBA as a defense and thereby " 'transform' " a state law suit into a federal case. (*Id.* at p. 694.) But under "settled Supreme Court precedent, '§ 301 does not grant the parties to a [CBA] the ability to contract for what is illegal under state law.' [Citation.]" (*Id.* at p. 695.)

In *Burnside v. Kiewit Pacific Corp.* (9th Cir. 2007) 491 F.3d 1053 (*Burnside*), class members alleged violations of California statutes and regulatory orders after their employer failed to pay them for the time spent traveling from meeting sites and jobsites and back again. (*Id.* at pp. 1055, 1058) Their CBAs included rules about shift length, overtime, and compensation for transportation. (*Id.* at pp. 1056-1057.) But state law set out other rules for determining the compensability of such time. (*Id.* at pp. 1060-1061.)

*Burnside* held the claims were not preempted. First, the claims were based on state laws independent of the CBA. (See *Burnside, supra*, 491 F.3d at pp. 1060-1070.) Next, the claims did not substantially depend on the CBA. Although the CBA set out detailed work rules; even if state law and the CBA had parallel provisions requiring interpretation that did not mean the state law claims depended on the CBA. (See *id.* at p. 1072; see also *Moreau v. San Diego Transit Corp.* (1989) 210 Cal.App.3d 614, 623 ["A mere overlapping of protections or terms found in both a [CBA] and state law does not necessarily require preemption"].) Finally, the fact that ascertainment of damages might require consulting the CBA did not suffice to show preemption, because merely looking at the CBA to determine the appropriate wage rate would not *interpret* the CBA. (See *Burnside*, at pp. 1073-1074.)

A defense must require interpretation of the CBA before preemption will be found. "Although the plaintiff cannot avoid preemption by 'artfully pleading' the claim [citation], the claim must '*require interpretation*' of the [CBA]. . . . Preemption occurs when a claim cannot be resolved on the merits without choosing among competing

interpretations of a [CBA] and its application to the claim." (*Sciborski*, *supra*, 205 Cal.App.4th at pp. 1164-1165.)

As we explain *post*, because a CBA cannot authorize violations of state law, resolution of plaintiffs' claims does not require interpreting the CBA, and the CBA does not reference the statutes on which these plaintiffs rely, plaintiffs' claims are neither arbitrable under the CBA nor preempted by section 301.

II

*Save Mart's Claims*

Save Mart insists that all the claims against it are arbitrable under the CBA and preempted by section 301. We disagree. Save Mart neither acknowledges the force of the controlling authority nor explains how plaintiffs' claims do not fall within the authorities cited *ante* that have found state statutory claims functionally identical to plaintiffs' claims were *not* preempted. Ignoring precedent is not persuasive.

A. *Preemption Findings*

Save Mart first faults the trial court's written ruling for purportedly truncating the analysis after finding the CBA did not cover plaintiffs' claims. In Save Mart's view, "The trial court's order, which failed to address this issue of law [i.e., preemption], should be reversed and arbitration of [the] claims ordered." Save Mart cites no authority for the implied proposition that a trial court's purported failure to analyze all relevant legal issues in a written ruling requires reversal.[3] It does not.

A written statement of reasons prepared by a trial court does not equate to a statement of decision. (See *Taormino v. Denny* (1970) 1 Cal.3d 679, 684; *Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511, 551-552.) Written reasons "may be valuable in illustrating the trial judge's theory but they may never be used to impeach the

---

[3] When asked about this proposition at oral argument, counsel for Save Mart appeared to retreat from the position taken in Save Mart's briefing.

order or judgment." (*Burbank-Glendale-Pasadena Airport Authority v. Hensler* (1991) 233 Cal.App.3d 577, 591.)  Absent a statement of decision, a ruling "is presumed to be correct . . . and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)[4]

B. *Preemption of the Claims*

Save Mart next contends that every single claim of each plaintiff herein is preempted by section 301.  This position is incorrect and ignores binding precedent.

1. *Test for Preemption*

The Ninth Circuit "has articulated a two-step inquiry to analyze § 301 preemption of state law claims.  First, a court must determine 'whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA.  If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there.'  [Citation.]  If the court determines that the right underlying the plaintiff's state law claim(s) 'exists independently of the CBA,' it moves to the second step, asking whether the right 'is nevertheless "substantially dependent on analysis of a [CBA]." '  [Citation.]  Where there is such substantial dependence, the state law claim is preempted by § 301.  If there is not, then the claim can proceed under state law." (*Kobold v. Good Samaritan Regional Medical Center* (9th Cir. 2016) 832 F.3d 1024, 1032-1033, fn. omitted (*Kobold*).)

As we have set forth in Part I, *ante*, when determining independence from the CBA, the courts focus on the legal character of the claim rather than the underlying set of facts.  The question is whether the claim can be resolved by looking to the CBA without

---

[4] In making this argument, Save Mart suggests that preemption analysis is *entirely unrelated* to the arbitrability question.  But the two inquiries largely overlap.  If a CBA does not provide for arbitration of a state statutory tort, there would rarely be a need to interpret the CBA to resolve that tort.

the need for interpretation of the CBA. " '[I]n the context of § 301 complete preemption, the term "interpret" is defined narrowly—it means something more than "consider," "refer to," or "apply." ' [Citation.] And, notably, 'a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state law claim, transform the action into one arising under federal law.' " (*Kobold, supra*, 832 F.3d at p. 1033.)

### 2. *Analysis*

All of plaintiffs' claims here are based on nonnegotiable state law policies against medical condition discrimination and related torts (under FEHA), whistleblower retaliation (under Lab. Code, § 1102.5), and discipline in violation of public policies set by positive law (here, FEHA and the workers' compensation statutes).

Plaintiffs' primary claims are that Save Mart violated FEHA by not accommodating their medical conditions. Although the CBA might address things like work assignments and scheduling, which could potentially be *relevant* in a FEHA suit, the CBA would not have to be *interpreted* in order to reference this information. Nor could the CBA possibly permit Save Mart to violate FEHA by making (or denying) work assignments *because of* an employee's medical condition, rather than for neutral business reasons. (See *Matson v. United Parcel Service, Inc.* (9th Cir. 2016) 840 F.3d 1126, 1133-1134 (*Matson*) ["Put differently, Matson's contention is not that UPS created a hostile work environment by violating her contractual seniority rights. Rather, her position is that failing to assign her the work despite her seniority is *evidence* of UPS's hostility toward her because of her gender"].)

Generally, a claim based on a "nonnegotiable" right will *rarely* require interpretation of a CBA, which by definition represents the culmination of negotiations between labor and management. (See, e.g., White, *Section 301's Preemption of State Law Claims: A Model for Analysis* (1990) 41 Ala. L.Rev. 377, 425-426 [" 'nonnegotiable' rights are designed to protect the public good rather than the rights of

a single individual;' " and "State law claims of discrimination and of retaliatory discharge are the most frequently encountered claims in the section 301 preemption context. At the outset, it should be noted that such claims will rarely be completely preempted"].) One California treatise collects cases finding various rights were nonnegotiable state law rights, including retaliatory discharge, discharge in violation of public policy, and discrimination "based on protected classifications such as race, age, sex, disability, etc.," among others. (Cal. Practice Guide: Employment Litigation (The Rutter Group 2017) Preemption Defenses, §§ 15:301-316.) And the Ninth Circuit has observed that in the enforcement of state law employment discrimination protections: "Litigation concerning such protections ordinarily focuses on adverse workplace incidents, probing into whether discriminatory motives underlay those incidents. As the focus is not only on what happened but why it happened, *resolving such litigation will rarely rest on rights created by CBAs or require interpreting CBAs in the sense required for § 301 preemption*." (*Matson*, *supra*, 840 F.3d at p. 1136, italics added.)

Here, Robles and Rymel allege they were required to wear degrading safety vests. Save Mart argues it would defend the claims on the ground that the custom and practice at the warehouse--endorsed by the union local--called for workers with certain tasks to wear those vests, and Robles and Rymel were not treated differently than other similar workers.[5] That defense might *look to* the CBA or union practices to ascertain the ability of Save Mart to impose safety rules, but Save Mart does not demonstrate that it would require an *interpretation* of the CBA. Robles and Rymel would have the burden to show they were forced to wear degrading safety vests for discriminatory reasons violating

---

[5] "Under longstanding labor law principles, the scope and meaning of a [CBA] is not limited to the text of the agreement. Instead, 'the industrial common law—the practices of the industry and the shop—is equally a part of the [CBA] although not expressed in it.' " (*Kobold*, *supra*, 832 F.3d at p. 1046.)

13

FEHA, and if they were, nothing in the CBA would change that fact or require interpretation.[6]

Similarly, if Hagins were disciplined *because* he reported the narrow aisle safety hazard that later led Cal-OSHA to cite Save Mart, nothing in the CBA would (or could) protect Save Mart from liability, nor would interpretation of the CBA be necessary.

Save Mart argues it fired Hagins for repeatedly violating production norms endorsed by the CBA and the custom and practice between the union local and Save Mart, and that it followed all progressive discipline rules set forth therein, and makes similar claims as to the other plaintiffs. If proven, these points could well provide Save Mart with solid defenses. But the CBA does not have to be *interpreted* to make out these defenses, it merely needs to be *consulted*, or viewed. (See *Kobold*, 832 F.3d *supra*, at p. 1033.)

Save Mart asserts that Rymel's and Roble's FEHA claims are based on the application of work rules under the CBA, legitimate request for medical documentation as provided by the CBA and governing customs, or neutral (grievable) rules about modified work duties. But again, claims that Save Mart acted with an improper motive do not depend on interpreting the CBA.

The two cases Save Mart appears to rely on most heavily prove inapposite and unpersuasive. *Ruiz*, *supra*, 122 Cal.App.4th 520 involved common law claims, not statutory claims. Ruiz was fired but then reinstated through a grievance under the relevant CBA; he then sued his employer for defamation and related torts based on "the

---

[6] Although the legal theories differ in some ways, all the alleged claims require a finding of discriminatory or retaliatory intent. (See, e.g., *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232 [FEHA plaintiff must show discrimination was a "substantial motivating factor" in adverse employment decision]; *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69 [whistleblower must prove retaliatory motive]; *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1426 [retaliatory termination in violation of public policy].)

employer's conduct during the investigation and interviews . . . and subsequent notification of the police of alleged false accusations." (*Id*. at pp. 524, 529.) The relevant CBA required the employer to investigate the matter, and *Ruiz* held the claims raised were necessarily intertwined with that investigation. (*Id*. at p. 530.) The cases here are nothing like *Ruiz*.

*Evangelista v. Inlandboatmen's Union of Pacific* (9th Cir. 1985) 777 F.2d 1390 is even further afield. There the employee was suing because a grievance proceeding initiated by another employee resulted in her loss of seniority; she initiated a second grievance challenging the decision, to no avail. (*Id*. at pp. 1393-1394.) She sued, in part alleging wrongful discharge, interference with economic advantage and inducing breach of contract. (*Id*. at pp. 1394, 1400.) Her claims were ruled preempted by section 301 because they hinged on whether the relevant CBA authorized the seniority decision or implicated her union's duty to fairly represent her. (*Id*. at p. 1401.) The Ninth Circuit pointed out that "Evangelista does not allege that her reduction in seniority interferes with any independent state public policy." (*Ibid*.) *Evangelista* does not help Save Mart, because here plaintiffs *do* allege violations of independent state public policies.

Accordingly, none of the plaintiffs' claims are preempted.

C. *Infringement*

Finally, Save Mart contends that allowing any of plaintiffs' claims to proceed would "infringe" on the arbitration grievance process set out in the CBA. Save Mart explains that the CBA establishes a for-cause disciplinary scheme with strict procedural safeguards for employees, and argues that allowing these civil tort suits to go forward would frustrate those protections. Save Mart speculates that if any plaintiff succeeded in court, he might leverage that finding to argue the "just cause" provision of the CBA was violated even if both the union local and Save Mart agreed the discipline at issue was appropriate, thereby exposing Save Mart to liability under the CBA by effectively bypassing its arbitration grievance procedures.

15

Save Mart cites *Ruiz* to argue that if an employee's claims do not require interpretation of the CBA, "the court must determine whether permitting the state law claims to proceed would infringe upon the arbitration process established by the [CBA].' [Citation.]" (*Ruiz, supra,* 122 Cal.App.4th at p. 529.) *Ruiz* was quoting from *Tellez v. Pacific Gas and Elec. Co., Inc.* (9th Cir. 1987) 817 F.2d 536 (at p. 538). It appears the infringement language was first used casually by *Tellez* and was interpreted by *Ruiz* and a federal district court (*Riggs v. Continental Baking Co.* (N.D. Cal. 1988) 678 F.Supp. 236, 238) as if there were a separate infringement test. A treatise also quotes that part of *Tellez*, albeit with no analysis. (See 2 Advising Cal. Employers and Employees (Cont.Ed.Bar 2018) Mediation and Arbitration of Employment Disputes, § 20.34.) Save Mart does not clearly explain the test for purported infringement, nor does Save Mart explain how it would be functionally different from the other ways to determine whether allowing a civil suit to proceed will disrupt the expected (and federally protected) labor-management bargain consummated by a CBA.[7]

Assuming the "infringement" test Save Mart invokes exists, Save Mart does not explain how its application would make a difference in *this* case. Save Mart explains that disputes about the employee termination and production norm provisions of the CBA are intended to be resolved through grievances. As an abstract proposition we do not disagree. But we fail to see how that changes the analysis we have already conducted, which covers Save Mart's points. The plaintiffs retain an independent (nonnegotiable)

---

[7] Save Mart also cites two cases to suggest they endorsed the "infringement" test, but neither case does so. (See *Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753; *Rodriguez v. Pacific Casting Co.* (N.D. Cal. 2012; No. 12-CV-00353NC) U.S. Dist. Lexis 76757.)

state law right to be free of discipline *caused by* protected activity, such as whistleblowing (Hagins) or exercising his FEHA rights (all plaintiffs).[8]

## DISPOSITION

The orders denying Save Mart's motions to compel arbitration are affirmed.  Save Mart shall pay each plaintiff's costs on appeal.  (See Cal. Rules of Court, rule 8.278.)

/s/
Duarte, J.

We concur:

/s/
Murray, Acting P. J.

/s/
Hoch, J.

---

[8]  We also decline to address Save Mart's hypothetical about a plaintiff prevailing (that is, proving Save Mart violated FEHA or the California whistleblower statute) and then bringing a separate suit or filing a grievance under the CBA raising the same claims.  The hypothetical does not change our analysis of Save Mart's claims about the instant lawsuits presently before the court.