Filed 2/18/21  Tayyar v. E&N Financial Services & Development, Inc. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MASSOUD TAYYAR et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> E&N FINANCIAL SERVICES & DEVELOPMENT, INC., <br><br> Defendant and Appellant. | B301732 <br><br> (Los Angeles County Super. Ct. No. EC066669) |

APPEAL from an order and judgment of the Superior Court of Los Angeles County, Benny Osorio and John J. Kralik, Judges.  Dismissed, in part, and affirmed, in part.

Law Offices of Stephen M. Feldman and Stephen M. Feldman, for Defendant and Appellant.

Law Offices of Frank H. Whitehead III and Frank H. Whitehead III, for Plaintiffs and Respondents.

———————————

## INTRODUCTION

This case involves a dispute arising from a $250,000 revolving line of credit secured by real property. Mark Goodfriend is a lawyer who connected plaintiff and respondent Massoud Tayyar, the borrower, with Ahron Zilberstein—principal of the lender, defendant and appellant E&N Financial Services and Development, Inc. (En Financial). Goodfriend drafted a contract (the Loan Agreement) under which En Financial made available to Tayyar a $250,000 revolving line of credit (the Loan). Zilberstein, for En Financial, and Tayyar signed the Loan Agreement in November 2015. Although the parties anticipated the Loan commencing in December 2015 and continuing for one year, the Loan did not fund until February 2016. When escrow closed on February 22, 2016, En Financial received a loan origination fee of $26,500.

As part of a new escrow opened in the spring of 2017 to carry out a larger refinance transaction, Zilberstein made a payoff demand for En Financial that included not just the Loan principal and remaining interest, but also a second $26,500 fee (the Finance Fee). Before escrow closed, Tayyar sent an e-mail to Zilberstein, disputing the Finance Fee and stating Tayyar would pay such amount, but under protest

2

and duress reserving all of his rights. The escrow closed May 31, 2017, with Zilberstein receiving the full payoff amount, including the Finance Fee. Tayyar later demanded that En Financial refund the Finance Fee and then filed the current lawsuit.

At a bench trial, Tayyar and plaintiff and respondent 838-840 N. El Molino LLC (El Molino), an entity Tayyar set up in connection with the larger refinance transaction, prevailed on their cause of action for restitution and recovered 75 percent of the Finance Fee, plus interest. In this appeal, En Financial asks this court to reverse the restitution award in favor of Tayyar and El Molino (collectively, Respondents). En Financial contends the award is not supported by evidence or law. Alternatively, En Financial contends that the award should be reduced, and that it was error to award judgment in favor of Tayyar as an individual.

Respondents contend that the restitution award is supported by substantial evidence. In addition, because En Financial has not shown error in either the award calculation or entry of judgment in favor of both Tayyar and El Molino, no amendment of the judgment is warranted. Finding substantial evidence to support the restitution award in favor of Respondents, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

## A. Loan Agreement between Tayyar and En Financial

Tayyar and his wife owned real property located on El Molino Avenue in Pasadena (the "El Molino property"). Tayyar filed for individual Chapter 11 bankruptcy in November 2013. Goodfriend represented Tayyar in his bankruptcy, and Tayyar needed access to funding as part of his reorganization plan. Goodfriend, who was Zilberstein's family friend and had been his attorney for 17 years, asked Zilberstein to provide funding for the Loan. Goodfriend represented both En Financial and Tayyar in the Loan transaction, and communications between the two went through Goodfriend; there were no direct conversations between Zilberstein and Tayyar.

Goodfriend drafted the Loan Agreement between Tayyar and En Financial, which the parties signed on November 18, 2015. Under the terms of the Loan Agreement, all sums advanced would bear a 12 percent annual interest rate, and En Financial would receive an origination fee of $26,500. The term provision stated: "Subject to approval of the Bankruptcy Court if required, [and] confirmation of Borrower's pending Fifth Amended Plan of Reorganization, . . . the term of this Agreement shall commence on December 31, 2015 and shall terminate on December 31, 2016 (the 'Maturity Date')." The Loan funding

was secured by a deed of trust in third position on the El Molino property.

Paragraph 12 of the Loan Agreement stated: "At the Maturity Date, if Borrower is not in default, if Borrower requests a renewal or extension of the Term for an additional year, provided Lender is reasonably satisfied that the value of the [El Molino] Property is at least $4,500,000.00, Lender will enter into a new agreement with Borrower, upon similar terms (including but not limited to Borrower paying Lender additional origination fees and charges in the sum of an additional $26,500.00 at that time.)"

On February 5, 2016, the bankruptcy court approved Tayyar's Fifth Amended Chapter 11 Plan of Reorganization, which included the Loan. The Loan was funded through an escrow with Ticor Title on February 22, 2016, and En Financial was paid the loan origination fee of $26,500. Beginning in March 2016 and ending April 2017, Tayyar made 14 monthly loan payments of $2,440. Most of Tayyar's monthly payments were made on or around the 22nd of every month.

Until May 2017, Tayyar never received from En Financial any demand or request to repay the Loan principal or to pay the Finance Fee. Goodfriend testified that there was no written amendment of the Loan Agreement. When Zilberstein wanted to be paid the Loan principal in December 2016, Goodfriend told Zilberstein that Tayyar was working on a refinance that would pay En Financial. When

5

Zilberstein complained in February 2017 that he wanted the Loan principal repaid, Goodfriend might have said something to Zilberstein like "you're getting $2,440 per month in interest, one percent interest. . . . Can you hold out a little longer?" Goodfriend also testified that he intended for the Loan to be for a period of one year from the date of funding, with the parties having the option to agree to a second year. Zilberstein testified that he did not agree to any extension.

**B. Refinance and dispute over Finance Fee**

On April 24, 2017, Tayyar formed El Molino as a limited liability company to hold title to the El Molino property. El Molino was the borrower in a refinance transaction that would consolidate several loans secured by the El Molino property, including the En Financial's Loan to Tayyar. Tayyar testified that he and his wife had applied for the new loan, and the lender required them to place the property in El Molino's name as a condition to obtaining the loan. As part of the refinance, a beneficiary demand letter was prepared for Zilberstein to review and sign, specifying En Financial's payoff details. The original demand letter identified the Loan principal and daily interest amounts, but did not include any reference to the Finance Fee. Zilberstein initially refused to sign the demand letter, and contacted Goodfriend to ask why the Finance Fee was not included in En Financial's demand. Zilberstein testified at trial that the

parties to the refinance were waiting for him to sign the reconveyance, and he did not want to sign it unless he had a complete release from Tayyar. A week later, a notary brought Zilberstein a revised demand letter that included the Finance Fee. When Zilberstein asked Goodfriend for a release of all claims, Goodfriend told him that as long as Tayyar signed the demand letter, it would be okay. On April 30, 2017, Zilberstein signed both the demand letter and a document reconveying En Financial's deed of trust.

Before escrow closed, Tayyar protested the Finance Fee payment demand. On May 24, 2017, Tayyar sent an e-mail to Zilberstein attaching a letter. The text of the e-mail and the attached letter stated "This will confirm that the sum of $26,500, which you demanded and which is being paid to you through escrow out of proceeds from the loan paying off your line of credit, is disputed and is being paid under protest and duress, and I hereby reserve all of my rights." Zilberstein responded by e-mail, stating "No problem I will fill [*sic*] a notice of default ASAP." Tayyar responded "In your fit of your anger you stated that you will file a notice of default, however, I am not in default. In fact you have already represented the amount you claim I owe when you sent escrow your demand. Escrow will close soon and you will be paid. Thus there is no default and no basis for you to file a notice of default now. I simply wrote you saying I dispute your claim of an additional $26,500 being owed but that I will pay that to you through escrow even though I do not think I owe that additional sum to you."

On May 27, 2017, Tayyar signed the beneficiary demand below the following printed statement: "Approved to pay at close of escrow." On the same day, as part of the refinance transaction, Tayyar and his wife executed a grant deed transferring the El Molino property to El Molino, and El Molino (acting through its manager, Tayyar) executed a deed of trust securing a loan of close to $3 million. The surplus of the loan proceeds was deposited into a bank account owned by Tayyar and his wife.

On May 31, 2017, $273,915.86 was disbursed from escrow to En Financial. That amount came from the proceeds of the new refinancing loan and included the Loan principal, daily interest, and the Finance Fee. Tayyar testified that if the Finance Fee had not been demanded and disbursed to En Financial out of escrow, the funds would have been deposited into a bank account held by Tayyar and his wife.

Tayyar sent a letter to Zilberstein on June 5, 2017, raising again his objection to En Financial's receipt of the Finance Fee. Tayyar pointed out that he had never requested a renewal of the Loan as required under paragraph 12 (Option to Renew). Tayyar demanded a refund by June 16, 2017, or he would pursue legal remedies.

## C. Tayyar sues En Financial to recover fee amount

Tayyar filed a complaint against En Financial on June 20, 2017. The procedural history of the case includes

numerous motions and an initial bench trial before Judge Benny Osorio. That trial ended in a judgment for En Financial. The court later granted Tayyar's motion for a new trial, and a second bench trial took place before Judge John Kralik over two days in April 2019. The operative pleading for the second trial was a third amended complaint with two causes of action: breach of contract and restitution.

## D. Trial Court's Opinion and Judgment

On May 2, 2019, Judge Kralik issued a detailed minute order titled "Ruling on Submitted Matter," finding in favor of En Financial on the breach of contract cause of action and in favor of Respondents on the restitution cause of action. In the ruling, Judge Kralik reviewed the Loan Agreement and the performance of each party. After quoting the portion of the Loan Agreement concerning renewal, the court stated that based on the testimony presented, "it became clear to the Court that the [Loan] was never renewed. Mr. Tayyar did not request a renewal. [En Financial] did not really want a renewal as Mr. Zilberstein was uncomfortable with this line of credit. He testified that he provided it only to accommodate his old friend, Mr. Goodfriend. A renewed agreement would have required him to commit to lending for another full year, which he probably would not have done." Despite the lack of a renewal, the parties carried on when the Loan expired, which was no later than February 2017.

9

Noting the "obvious failures of communications," the court observed that the delay in refinancing was the cause of the current conflict. The following excerpt from the ruling contains the conclusions that are being challenged on appeal, and so we quote the matter in full:

"From the point of view of [En Financial,] the revolving credit line was open for five months after the initially contemplated maturity date, and fifteen months after the funds were advanced. Thus, [En Financial] felt justified in demanding the payment of a second $26,500 fee.

"From these facts, the Court has concluded that [En Financial's] retention of the $26,500 did not constitute a breach of the [Loan.] As that agreement was never renewed, there was no provision in it for charging or refunding an additional finance fee in May 2017. Thus, the Court finds for [En Financial] on the first cause of action.

"[En Financial's] retention of the funds, however, was not justified by a default under the [Loan,] or by a renewal of that agreement. Tayyar did not default under the [Loan,] and it was never renewed. Thus, [En Financial's] demand for the $26,500 was based, at best, on an implied contract for equitable compensation as the result of its forbearance of three or five months. As an equitable demand, it was not equitable enough."

The court ordered En Financial to return 75 percent of the Finance Fee, plus 5 percent interest from May 31, 2017. Explaining its reasoning, the court stated "[En Financial] did not earn a full renewal fee because it never committed to

10

lend the $250,000 for an additional year.  Its retention of the full [Finance Fee] is, therefor inequitable under the circumstances.  The Court does find that it is equitable for [En Financial] to retain Three/Twelfths (or 25%) of the fee in view of the delay in refinancing."

The court entered judgment in favor of Respondents in the amount of $19,875—representing three-quarters of the Finance Fee—with interest at 5 percent from May 31, 2017 (the date En Financial's loan was paid out of the refinancing escrow), the amount and interest rate representing the court's equitable findings.  Neither party requested a statement of decision or filed a notice of entry of judgment.  On October 22, 2019, En Financial filed a notice of appeal.

## DISCUSSION

### A. Issues on appeal[1]

En Financial seeks to reverse the trial court's judgment in favor of Respondents on their cause of action for

---

[1] In its opening brief, En Financial sought review of the ruling of Judge Osorio granting Tayyar's motion for a new trial after En Financial had prevailed in the first trial.  En Financial concedes in its reply brief, however, that it failed to timely appeal Judge Osorio's ruling.  (Code Civ. Proc., § 904.1, subd. (a)(4) [order granting new trial is directly appealable].)  Therefore, we do not address the argument and instead dismiss as untimely that portion of En Financial's appeal.  (Cal. Rules of Court, rule 8.104(b).)

restitution, contending that the restitution award was "contrary to the law and the facts." Beyond this broad assertion, En Financial argues that the evidence at trial either did not support the specific findings set forth in Judge Kralik's ruling, or that the evidence required the trial judge to reach different conclusions. Specifically, En Financial asserts that: no competent evidence supports that the term of the Loan Agreement extended one year from funding; since Tayyar did not repay by the maturity date in the Loan Agreement, but continued to pay monthly interest, he must have been given an extension, requiring payment of the full Finance Fee; Tayyar's agreement to the payment of that fee through escrow demonstrates that he is barred from seeking it, based estoppel or unclean hands, or as a matter of equity; and in any event the amount awarded in restitution was too high. En Financial also argues that the award to Tayyar as an individual (in addition to El Molino) was error because Tayyar lacks standing.

En Financial's arguments essentially ask this court to draw different inferences from the existing evidence, something that it is not our role to do. After a discussion of the standard of review on appeal and the law governing restitution claims, we summarize the substantial evidence supporting the court's restitution award, and show that En Financial's specific contentions fail.

## B. Standard of review

In order to prevail on appeal, En Financial must show that there is no substantial evidence to support the express or implied facts supporting the court's restitution award. As a reviewing court, we must draw all reasonable inferences and resolve all evidentiary conflicts in favor of the judgment. (*City of Glendale v. Marcus Cable Associates, LLC* (2014) 231 Cal.App.4th 1359, 1385; *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)

Absent a statement of decision, a ruling "is presumed to be correct . . . and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) "A written statement of reasons prepared by a trial court does not equate to a statement of decision. [Citations.] Written reasons 'may be valuable in illustrating the trial judge's theory but they may never be used to impeach the order or judgment.' [Citation.]" (*Rymel v. Save Mart Supermarkets, Inc.* (2018) 30 Cal.App.5th 853, 862 (*Rymel*).)

In the absence of a statement of decision, the doctrine of implied findings applies. (*LSREF2 Clover Property 4, LLC v. Festival Retail Fund 1, LP* (2016) 3 Cal.App.5th 1067, 1076.) "Under the doctrine of implied findings, the reviewing court must infer . . . that the trial court impliedly made every factual finding necessary to support its decision." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 48 (*Fladeboe*).) We affirm a judgment if

correct on any ground.  (*Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 610.)

## C. Tayyar's restitution claim

### *Restitution law*

Whether a claim is labeled restitution or unjust enrichment, California law recognizes that an individual who is unjustly enriched at the expense of another may be held liable for restitution.  (*Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 51; *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1370 (*Durell*) ["Unjust enrichment is synonymous with restitution"]; see Rest.3d Restitution and Unjust Enrichment, § 1.)  The elements of the claim are "'receipt of a benefit and unjust retention of the benefit at the expense of another.' (*Lectrodryer v. Seoulbank* (2000) 77 Cal.App.4th 723, 726.)"  (*Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.* (2018) 29 Cal.App.5th 230, 238.)

"Restitution is not mandated merely because one person has realized a gain at another's expense.  Rather, the obligation arises when the enrichment obtained lacks any adequate legal basis and thus 'cannot conscientiously be retained.' (Rest.3d Restitution and Unjust Enrichment, § 1, com. b, p. 6.)"  (*Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.* (2015) 61 Cal.4th 988, 998.)  "Where the doctrine applies, the law implies a restitutionary obligation, even if

14

no contract between the parties itself expresses or implies such a duty. [Citation.] Though this restitutionary obligation is often described as quasi-contractual, a privity of relationship between the parties is not necessarily required." (*Ibid*.) "A claim for restitution is permitted even if the party inconsistently pleads a breach of contract claim that alleges the existence of an enforceable agreement." (*Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 231.)

"'There are several potential bases for a cause of action seeking restitution. For example, restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason. [Citations.] Alternatively, restitution may be awarded where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct. In such cases, the plaintiff may choose not to sue in tort, but instead to seek restitution on a quasi-contract theory . . . . [Citations.] In such cases, where appropriate, the law will imply a contract (or rather, a quasi-contract), without regard to the parties' intent, in order to avoid unjust enrichment.' [Citation.]" (*Durell, supra*, 183 Cal.App.4th at p. 1370.)

According to section 35 of the Restatement Third of Restitution and Unjust Enrichment, "If one party to a contract demands from the other a performance that is not in fact due by the terms of their agreement, under circumstances making it reasonable to accede to the demand

15

rather than to insist on an immediate test of the disputed obligation, the party on whom the demand is made may render such performance under protest or with reservation of rights, preserving a claim in restitution to recover the value of the benefit conferred in excess of the recipient's contractual entitlement."  The California Supreme Court has stated a similar rule, holding that when the facts establish that "a reasonably prudent man" must make a monetary payment "in order to preserve his property or protect his business interests" "which he does not owe and which in equity and good conscience the receiver should not retain," the payment may be recovered.  (*Young v. Hoagland* (1931) 212 Cal. 426, 430–432 [restitution affirmed where company's outgoing board levied an invalid assessment and plaintiff shareholder paid under protest to avoid a sale of the shares].)

### *Substantial evidence in support of the restitution award*

Based on its factual determination that the parties had no agreement to renew the Loan, the court found in favor of Respondents on their restitution claim.  The record contains substantial evidence to support the court's decision.  The court expressly found that the Loan was never renewed, and impliedly found no Loan extension triggering an obligation to pay the full Finance Fee.  (*Fladeboe*, *supra*, 150 Cal.App.4th at p. 48 [reviewing court infers that the trial

16

court impliedly found all facts necessary for the decision].) Based on those findings, the court concluded that En Financial was unjustly enriched when it received the benefit of the full Finance Fee payment, and Respondents were entitled to have 75 percent of the payment returned.

It is undisputed that En Financial received the benefit of the Finance Fee payment. The question on appeal is whether there is substantial evidence to support the trial court's determination that permitting En Financial to retain that benefit at the expense of Respondents would be unjust enrichment.

Under the trial court's reasoning, because the parties never reached an agreement to renew the Loan, the Finance Fee payment unjustly enriched En Financial. (Rest.3d Restitution & Unjust Enrichment, § 35; *Young v. Hoagland, supra*, 212 Cal. at pp. 430–432.) This conclusion was supported by substantial evidence. First, the Loan Agreement required Tayyar to request a renewal or extension,[2] and the testimony supported an inference that no such request was ever made. Second, Zilberstein testified he

_____

[2] Paragraph 12 of the Loan stated: "At the Maturity Date, if Borrower is not in default, if Borrower requests a renewal or extension of the Term for an additional year, provided Lender is reasonably satisfied that the value of the [El Molino] Property is at least $4,500,000.00, Lender will enter into a new agreement with Borrower, upon similar terms (including but not limited to Borrower paying Lender additional origination fees and charges in the sum of an additional $26,500.00 at that time)."

would not have agreed to extend the Loan for an additional year, and did not do so.  Third, the evidence showed that Tayyar continued making monthly payments—which En Financial accepted—on the Loan for several months after the designated maturity date in December 2016, and past February 2017, the one-year marker after the Loan funds were disbursed.  During that time (and until April 2017 in the context of the refinance) En Financial never communicated with Tayyar about repayment or an agreement to renew or extend the Loan, along with a Finance Fee payment.  In fact, before Tayyar's May 24, 2017 e-mail to Zilberstein stating that he was paying the Finance Fee under protest, there was no evidence that Zilberstein and Tayyar had any direct communication about the Finance Fee.  Goodfriend testified that when Zilberstein expressed a desire to have the principal repaid, Goodfriend told Zilberstein to wait for the refinance to occur.  Goodfriend had no recollection of any discussions with Tayyar about default, extension or a new agreement.  In addition, there is evidence that Zilberstein was concerned about potential liability, as he asked Goodfriend to obtain a release of all claims from Tayyar.  That Zilberstein relied on Goodfriend's advice that a release was not necessary does not preclude a court from finding in favor of Tayyar on his restitution claim based on the absence of any agreement to renew or extend the Loan and pay the Finance Fee.

18

***En Financial's specific contentions***

As discussed above, there is substantial evidence to support the trial court's conclusion that En Financial received a benefit, and would be unjustly enriched if allowed to retain it. None of En Financial's arguments demonstrate otherwise.

En Financial starts its argument by asking this court to find that the Loan term ended December 2016, not February 2017 as the trial court concluded. There was substantial evidence that the parties understood the Loan term would run for one year after funding, and that the Loan funded in February 2016. Therefore, the court's factual finding that the Loan term ended in February 2017 is supported by substantial evidence.

Attempting to sidestep the trial court's express finding that there was no agreement to renew the Loan, En Financial next argues that the parties' actions constituted an extension, triggering an obligation to pay the Finance Fee. In its reply brief, En Financial adjusts its "extension" argument slightly, pointing to the court's own factual finding that "Despite the lack of a renewal, the parties simply carried on when the term of the [Loan] expired, no later than late February 2017." En Financial argues that that Tayyar's failure to repay the Loan principal on the maturity date—instead just making monthly payments—was an extension of the Loan, entitling En Financial to payment of the Finance Fee. However, this argument does not overcome the

substantial evidence supporting the trial court's determination that it would be inequitable to allow En Financial to retain the full Finance Fee. Statements or comments made in a written order "may be valuable in illustrating the trial judge's theory but they may never be used to impeach the order or judgment." (*Burbank-Glendale-Pasadena Airport Authority v. Hensler* (1991) 233 Cal.App.3d 577, 591; *Rymel*, *supra*, 30 Cal.App.5th at p. 862.)

En Financial also contends that even if the conditions of renewal or extension were not met, there was a valid agreement to pay the Finance Fee, based on Tayyar's signature approving payment of the amounts described in the April 30, 2017 Beneficiary Demand and his signature on Estimated Settlement Statement. This argument ignores the relevant standard of review, asking this court to draw inferences from the evidence and reach a different conclusion than the trial court reached. While the evidence that Tayyar signed both the beneficiary demand and the estimated closing settlement statement might arguably support a decision to deny Tayyar's restitution claim, it does not negate the substantial evidence supporting the opposite conclusion, that Tayyar was entitled to restitution. En Financial has not demonstrated on appeal that the trial court's inferences were unreasonable. (*Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 913 ["when conflicting inferences may be drawn from undisputed facts,

the reviewing court must accept the inference drawn by the trier of fact so long as it is reasonable"].)

Finally, En Financial contends that the restitution award was precluded by the equitable doctrines of estoppel[3] and unclean hands.[4] The trial court's restitution award

---

[3] "'The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citations.]'" (*City of Goleta v. Superior Court* (2006) 40 Cal.4th 270, 279; accord, *Estill v. County of Shasta* (2018) 25 Cal.App.5th 702, 710–711; *Attard v. Board of Supervisors of Contra Costa County* (2017) 14 Cal.App.5th 1066, 1079.)

[4] Under the doctrine of unclean hands, "one who comes to court seeking equity must come with clean hands." (*Jay Bharat Developers, Inc. v. Minidis* (2008) 167 Cal.App.4th 437, 445.) "The doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." (*Kendall–Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978.) "The doctrine promotes justice by

included an implied finding that Tayyar's claim was not barred by either equitable doctrine, and there is substantial evidence to support that finding. (See, e.g., *Fladeboe*, *supra*, 150 Cal.App.4th at p. 48 [reviewing court infers that the trial court impliedly found all facts necessary for the decision].) Implicit in the court's restitution award is a factual determination that Tayyar's signatures on the beneficiary demand and the estimated settlement statement did not reflect an intent to induce Zilberstein to rely upon them, nor was such reliance reasonable enough to prevent Tayyar from denying, under equitable estoppel, liability for the Finance Fee. Similarly, the court did not view Tayyar as having acted unfairly, or engaging in any misconduct or deceptive behavior by approving of the beneficiary demand, sufficient to qualify as unclean hands. There was substantial evidence that Tayyar signed the beneficiary demand as part of a large stack of documents presented to him as part of the escrow process for refinance transaction worth almost 3 million dollars, and had to satisfy Zilberstein's demand to complete the refinance transaction. He also alerted Zilberstein before the close of escrow that he

---

making a plaintiff answer for his own misconduct in the action. It prevents 'a wrongdoer from enjoying the fruits of his transgression.' [Citations.]" (*Ibid*.) However, the doctrine of unclean hands "does not create substantive rights under the guise of doing equity, that is, it does not confer rights when the one who invokes it has none." (*Stein v. Simpson* (1951) 37 Cal.2d 79, 83.)

22

was paying the Finance Fee under protest.  This evidence supports an implied finding that it was reasonable for Tayyar to accede to En Financial's demand, render the payment under protest, and reserve his rights, rather than to insist on an immediate test of the disputed obligation.  On these facts, we find substantial evidence to support the court's implied finding that Tayyar's restitution claim was not barred by equitable estoppel or the doctrine of unclean hands.

### *Calculation of the amount of restitution*

En Financial next contends that the trial court's decision to apportion the restitution award, requiring it to return 75 percent of the Finance Fee, was error.  Without citing to any law to support its argument, En Financial argues that the court improperly modified the terms of the Loan Agreement.  According to En Financial, there was inadequate evidence to support the court's decision to depart from language in the Loan Agreement identifying a maturity date of December 31, 2016, and providing for payment of the full Finance Fee for any renewal or extension.  En Financial then argues that if the Finance Fee is to be apportioned, the court erroneously determined that Tayyar had the benefit of the Loan funds for three months, rather than five.

We are not persuaded, primarily because these arguments simply repeat the disagreement En Financial has with the trial court's factual determinations.  There was

substantial evidence to support the court's finding that the Loan term ended on February 22, 2017, one year after the Loan funds were made available.  Based on the Loan payoff date of May 31, 2017, it was reasonable for the court to conclude that while it was unjust for En Financial to retain the entire Finance Fee payment, it would not be unjust to permit it to retain 25 percent, corresponding to the three months (March, April, and May) during which Tayyar continued to use the Loan principal after the Loan term ended.

### *Judgment in favor of Tayar*

Lastly, En Financial argues that Tayyar lacked standing to obtain restitution, because he did not personally pay the benefit that caused En Financial to be unjustly enriched.  To support its argument, En Financial points to a statement in the trial court's ruling that "the funds arguably should have gone to" El Molino, the limited liability company that held the real property as collateral for the refinance. Based on record evidence that the balance of the escrow proceeds were deposited to a bank account held by Tayyar and his wife, testimony that El Molino was created by Tayyar to comply with the conditions of the new loan, and evidence that Tayyar had authority to act on behalf of El Molino, we conclude that it was not error for the trial court to make the restitution award payable to both El Molino and Tayyar as an individual.

24

## DISPOSITION

The portion of the appeal challenging the August 17, 2018 order granting a motion for new trial is dismissed as untimely. The judgment is affirmed. Plaintiffs and respondents Massoud Tayyar and 838-840 N. El Molino, LLC are awarded their costs on appeal.


MOOR, J.

We concur:


BAKER, Acting P. J.


KIM, J.