**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| KAREN HARTSTEIN, in her representative capacity and on behalf of herself and all others similarly situated, *Plaintiff-Appellant*, v. HYATT CORPORATION, a Delaware corporation doing business in California, *Defendant-Appellee.* | No.22-55276 D.C. No. 2:20-cv-04874-DSF-JPR OPINION |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted July 17, 2023
Pasadena, California

Filed September 22, 2023

Before: A. Wallace Tashima and Danielle J. Forrest,
Circuit Judges, and Kathleen Cardone,[*] District Judge.

Opinion by Judge Tashima

---

[*] The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

# SUMMARY[**]

## Employment Claims

The panel affirmed in part and reversed in part the district court's summary judgment in favor of Hyatt Corporation in a class action brought by former California employees of Hyatt who were laid off after the COVID-19 pandemic, alleging that Hyatt violated California law by failing to pay them immediately for their accrued vacation time and by failing to compensate them for the value of the free hotel rooms employees received each year.

Hyatt contended that it was not required to pay its employees their accrued vacation pay until June 2020, when the employees were formally terminated. The panel concluded that the prompt payment provisions of the California Labor Code required Hyatt to pay plaintiffs their accrued vacation pay in March 2020. The California Division of Labor Standards Enforcement ("DLSE") opinion letter and its Policies and Interpretations Manual establish that a temporary layoff without a specific return date within the normal pay period is a discharge that triggers the prompt payment provisions of Cal. Labor Code § 201. Hyatt thus should have paid the accrued vacation pay at the initial layoff in March 2020 because the temporary layoff was longer than the normal pay period and there was no specific return date. The panel reversed the district court's grant of summary judgment to Hyatt as to the vacation pay claim and remanded for the district court to consider whether

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Hyatt acted willfully in failing to comply with the prompt payment provisions.

The panel also reversed the grant of summary judgment as to plaintiffs' Private Attorneys General Act and unfair competition claims, which the district court had dismissed as derivative of plaintiffs' claims under the Labor Code.

The panel held that the complimentary hotel rooms Hyatt provided to employees were excludable from the calculation of employees' regular rate of pay under the federal Fair Labor Standards Act (FLSA) because they were excludable as "other similar payments" under 29 C.F.R. § 778.224. The panel therefore affirmed the grant of summary judgment as to the complimentary hotel room claim.

## COUNSEL

Michael Rubin (argued) and Eileen B. Goldsmith, Altshuler Berzon LLP, San Francisco, California; Matthew W. Dietz and Jonathan M. Genish, Blackstone Law PC, Beverly Hills, California; for Plaintiff-Appellant.

Ian H. Gershengorn (argued), Lindsay C. Harrison, Adam G. Unikowsky, and Illyana A. Green, Jenner & Block LLP, Washington, D.C.; Kelsey L. Stimple, Jenner & Block LLP, Chicago, Illinois; Holger Besch and Brian P. Long, Seyfarth Shaw LLP, Los Angeles, California; Michael Afar, Seyfarth Shaw LLP, Los Angeles, California; for Defendant-Appellee.

## OPINION

TASHIMA, Circuit Judge:

Plaintiffs, Karen Hartstein and members of a certified class, are former California employees of Hyatt Corporation who were laid off after the COVID-19 pandemic struck in March 2020.  Plaintiffs were laid off in March 2020 and then terminated in June 2020.  Plaintiffs contend that Hyatt violated California law by failing to pay them immediately for their accrued vacation time and by failing to compensate them for the value of free hotel rooms employees received each year.  The district court granted summary judgment in favor of Hyatt and dismissed the case with prejudice.

We conclude that the prompt payment provisions of the California Labor Code required Hyatt to pay Plaintiffs their accrued vacation pay in March 2020.  We therefore reverse the district court's grant of summary judgment to Hyatt as to the vacation pay claim and remand for the district court to consider whether Hyatt acted willfully in failing to comply with the prompt payment provisions.  However, the complimentary hotel rooms Hyatt provided to employees were excludable from the calculation of employees' regular rate of pay under the Fair Labor Standards Act (FLSA).  We therefore affirm the grant of summary judgment as to the complimentary hotel room claim.

## BACKGROUND

In March 2020, because of the reduction in business caused by the COVID-19 pandemic, Hyatt decided to furlough or temporarily lay off over 7,000 employees. Hartstein received a letter dated March 24, 2020, from Greg Cornwell, Director of Human Resources at the Hyatt Regency Huntington Beach Resort & Spa, stating that "all

colleagues . . . will be furloughed/temporarily laid off from their employment on March 24, 2020," and expressing the hope that the hotel's business would return to normal in eight to twelve weeks, depending on "the circumstances at that time."[1]  The letter stated that health benefits would continue through April and May and that accrued vacation pay could be paid upon the employee's request, although Hyatt was "not separating anyone's employment at this time. . . .  As with personal leaves of absence, colleagues on furlough will not accrue vacation/PTO [paid time off] during their furlough period."[2]

In June 2020, Hyatt sent another letter, informing employees that "your furlough will become a layoff effective June 27, 2020 and your employment with Hyatt will be terminated as of that date."  The letter stated that, "[a]s part of the transition to layoff status, you will be paid all unused accrued and earned vacation as well as unused floating holidays."  In a "Frequently Asked Questions" notice, Hyatt explained that "[y]our status with Hyatt is 'layoff' and we hope this will be temporary.  However, because we are unable to provide you with a return to work date at this time, your layoff is 'indefinite' and is considered a termination."

Plaintiff filed a class action complaint in Los Angeles County Superior Court on behalf of a putative class of California Hyatt employees, asserting claims under California law for failure to pay all wages upon discharge,

---

[1] According to Cornwell, there was no difference between a temporary layoff and a furlough, but "'furlough' sounds better and is more palatable to people who are experiencing it."

[2] Cornwell stated that he subsequently learned that "the system" did cause employees to continue to accrue vacation time "until the point that they were laid off."

waiting time penalties, failure to furnish accurate wage statements, unfair business practices, and enforcement under the Private Attorneys General Act ("PAGA"), Cal. Labor Code § 2698.[3]  Hyatt removed the action to federal court.

In her First Amended Complaint, Plaintiff added a claim for failure to pay overtime.  The district court granted Plaintiff's motion for class certification and certified a class of individuals employed in California by Hyatt at any time between April 24, 2016, and final judgment, with three subclasses:  (1) class members whose employment was terminated and who were not paid for vested vacation time and/or floating holidays immediately upon termination; (2) class members whose employment was terminated and who were not paid for "vested non-discretionary hotel room bonuses" immediately upon termination;[4] and (3) class members who were hourly and/or non-exempt who worked overtime, received overtime pay, and earned hotel room bonuses.

The district court granted Hyatt's motion for summary judgment, denied Plaintiff's motion for partial summary judgment, and dismissed the action with prejudice.  The district court concluded that the March 2020 furlough of Hyatt's employees was not a termination within the meaning of § 227.3 because there was not a complete severance of the employer-employee relationship.  The court thus rejected Plaintiff's claim that Hyatt failed to pay all wages upon discharge.  The court also rejected Plaintiff's claim that the value of the complimentary hotel rooms class members were

---

[3] Further statutory references will be to the California Labor Code unless otherwise specified.

[4] Termination was defined to include employees who had been "temporarily laid off, laid off, or furloughed."

eligible to receive constituted wages they should have received upon discharge. And because it concluded that Hyatt was not required to pay the accrued vacation in March 2020, the district court declined to address whether Hyatt was liable for waiting time penalties under § 203 and whether Hyatt had a good faith dispute about the payments. Finally, the court granted Hyatt's summary judgment motion as to Plaintiff's claims under California's unfair competition law and PAGA as derivative of the claims under the California Labor Code. The action was dismissed with prejudice.

## STANDARD OF REVIEW

The district court's ruling on cross-motions for summary judgment is reviewed de novo. *Innova Sols., Inc. v. Baran*, 983 F.3d 428, 431 (9th Cir. 2020) (citing *Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 970 (9th Cir. 2011)).

## DISCUSSION

### I.  Prompt Payment Provisions

"California has long regarded the timely payment of employee wage claims as indispensable to the public welfare." *Smith v. Superior Ct.*, 137 P.3d 218, 221 (Cal. 2006). The California Supreme Court has explained that this public policy is necessary because "[d]elay of payment or loss of wages results in deprivation of the necessities of life, suffering inability to meet just obligations to others, and, in many cases may make the wage-earner a charge upon the public." *Id.* at 220–21 (quoting *Kerr's Catering Serv. v. Dep't of Indus. Rels.*, 369 P.2d 20, 24 (Cal. 1962)).

In furtherance of this important public policy, "[w]hen an employment relationship comes to an end, the Labor

Code requires employers to promptly pay any unpaid wages to the departing employee. The law establishes different payment deadlines depending on the manner of departure." *Naranjo v. Spectrum Sec. Servs., Inc.*, 509 P.3d 956, 960 (Cal. 2022). Section 201 "establishes a baseline statutory deadline for paying employees who are discharged from their employment." *Id.* The statute provides that, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."[5] § 201(a). If an employer willfully fails to pay wages due upon discharge as required by § 201, § 203 provides for so-called "waiting time penalties." *Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1143 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2903 (2022).

Hyatt does not contest that it was required to pay its employees their accrued vacation pay when the employees were discharged. The question is *when* the employees were discharged within the meaning of California's prompt payment provisions. Plaintiff argues that the indefinite layoff in March 2020 was a "discharge" within the meaning of § 201(a), triggering Hyatt's obligation to pay accrued vacation pay. Hyatt contends that it was not required to pay accrued vacation pay until June 2020, when employees were formally terminated. The district court concluded that payment was not due until the employees were terminated in June 2020, relying on § 227.3 rather than § 201. However,

---

[5] Section 202 "specifies the default deadline for paying employees who instead resign," and are not discharged. *Naranjo*, 509 P.3d at 961. In contrast to employees who are discharged and whose wages are "due and payable immediately," Cal. Lab. Code § 201, the wages of an employee who "quits his or her employment . . . shall become due and payable not later than 72 hours thereafter," *id.* § 202.

this interpretation of the prompt payment provisions is not supported by California authority.

Section 227.3 provides, in part, that "whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate."  It addresses *whether* accrued vacation pay constitutes wages that are due to the employee at termination – not *when* those wages are due.  The purpose of the statute is to "prohibit[] forfeiture of vested vacation pay at termination" and thus protect an employee's right to be paid for accrued vacation pay. *Boothby v. Atlas Mech., Inc.*, 8 Cal. Rptr. 2d 600, 602 (Ct. App. 1992); *see also Suastez v. Plastic Dress-Up Co.*, 647 P.2d 122, 128 (Cal. 1982) (construing § 227.3 to mean that "[t]he right to a paid vacation . . . constitutes deferred wages for services rendered," "a proportionate right to a paid vacation 'vests' as the labor is rendered," "the right is protected from forfeiture by section 227.3," and that, "[o]n termination of employment, therefore, [§ 227.3] requires that an employee be paid in wages for a pro rata share of his vacation pay"); *Paton v. Advanced Micro Devices, Inc.*, 129 Cal. Rptr. 3d 784, 785 (Ct. App. 2011) (explaining that, "[u]nder sections 201 and 202, an employer must pay an employee all wages earned and unpaid at the time, or soon after, employment terminates," and that, "if an employer offers paid vacations, section 227.3 provides that if an employee is terminated without having taken his vested vacation time, 'all vested vacation shall be paid to him as wages at his final rate' and the employer's policy 'shall not provide for forfeiture of vested vacation time upon termination'"); *Church v. Jamison*, 50 Cal. Rptr. 3d 166, 171 (Ct. App. 2006) ("An employee's right to be paid for

vacation time that has not been used when the employment ends is addressed by Labor Code section 227.3."). The parties do not dispute that the employees had the right to be paid for vacation time, and Hyatt paid the accrued vacation time after the June 2020 layoff.

In contrast to § 227.3, which establishes the right to accrued vacation pay, § 201 addresses *when* those wages become due and payable – that is, immediately upon discharge. As the California Supreme Court has explained, "[t]he prompt payment provisions of the Labor Code impose certain timing requirements on the payment of final wages to employees who are discharged (Lab. Code, § 201 (section 201)) and to those who quit their employment (§ 202)." *McLean v. California*, 377 P.3d 796, 797 (Cal. 2016); *see also Nishiki v. Danko Meredith, APC*, 236 Cal. Rptr. 3d 626, 633 (Ct. App. 2018) ("The purpose of section 203 is to compel the prompt payment of earned wages." (quoting *Barnhill v. Robert Saunders & Co.*, 177 Cal. Rptr. 803, 806 (Ct. App. 1981))). The issue here is not whether Plaintiffs were entitled to accrued vacation pay pursuant to § 227.3, but whether the prompt payment provision was triggered by the temporary layoff. That is, when did the discharge occur and the accrued vacation pay thus become due and payable – was it March 2020 or June 2020? Section 201(a), which requires the immediate payment of "wages earned and unpaid at the time of discharge," is the statute applicable here.[6]

---

[6] Hyatt contends that § 227.3 is "the provision that specifically concerns vacation pay." However, that section's concern is that "an employer must compensate the employee for all vested vacation time remaining unused at termination." *Boothby*, 8 Cal. Rptr. 2d at 601–02. It does not

Section 201 does not define "discharge." The question accordingly is whether a temporary layoff, with no specified return date, is a discharge for purposes of § 201. We have not found, and the parties have not cited, any caselaw that addresses this question. However, the California Division of Labor Standards Enforcement ("DLSE") has answered the question explicitly.

"The DLSE 'is the state agency empowered to enforce California's labor laws.'" *Brinker Rest. Corp. v. Superior Ct.*, 273 P.3d 513, 529 n.11 (Cal. 2012) (quoting *Morillion v. Royal Packing Co.*, 995 P.2d 139, 142 (Cal. 2000)); *see also Alvarado v. Dart Container Corp.*, 411 P.3d 528, 534 (Cal. 2018) (stating that "enforcement of a law, especially an ambiguous law, necessarily requires interpretation of that law, and with the benefit of many years' experience, the DLSE has developed numerous interpretations of California's labor laws, which it has compiled in a series of policy manuals").

In Opinion Letter 1996.05.30, the DLSE addressed an employer's question "regarding the obligation of an employer to pay wages due at the time of a 'temporary layoff.'" The DLSE replied that, "if an employee is laid off without a specific return date within the normal pay period, the wages earned to and including the lay off date are due and payable in accordance with Section 201." The DLSE cited *Campos v. Employment Development Department*, 183 Cal. Rptr. 637 (Ct. App. 1982), which addressed "whether workers on indefinite layoff are disqualified from receiving unemployment benefits when they refuse to accept recall offers in the course of a trade dispute." *Id.* at 639. *Campos*

---

address the timeliness of that payment. Section 201 is the statute that requires prompt payment of the vested vacation time.

concluded that, "where the employees have no contractual right to recall within any specified time period, the better approach is to treat such layoffs as indefinite, thereby terminating any employment relationship." *Id.* at 645.

The DLSE stated in Opinion Letter 1996.05.30 that

> [t]he needs of employees in the situation of a 'layoff' are what prompted the Division to historically take the position that the date of return must be within the pay period. For example, the employee may be required by the circumstances to travel to another location seeking work. Since many workers live from paycheck to paycheck, this travel and its attendant costs would require that the worker be paid all wages owed at that time.

The DLSE's position thus furthers the public policy implemented in § 201 – to avoid depriving employees of the necessities of life and making them "a charge upon the public." *Smith*, 137 P.3d at 220–21 (quoting *Kerri's Catering Serv.*, 369 P.2d at 24).

The DLSE rejected the employer's argument that there was no termination because the employee had contractual recall rights, explaining that "absent an unconditional right to return to full time employment on a date certain regardless of economic conditions, the 'right to recall' would be nothing more than a conditional promise by the employer unenforceable by the employee." Furthermore, "absent a specific agreement to the contrary, the employee would have the right to seek employment elsewhere and not return to the employer so there would exist no mutual promises to support a contract for continued employment." Similarly here,

Hyatt's position is that Plaintiffs were told that their employment was not terminated and that they would return to work at some unknown time – perhaps in eight to twelve weeks, according to its layoff letter. However, as the DLSE reasoned, and as was borne out here, this was nothing but an unenforceable promise.

The DLSE adopted the same position in its Policies and Interpretations Manual. In the chapter addressing wages payable on termination under section 201, the Policies and Interpretations Manual provides as to a layoff:

> If an employee is laid off without a specific return date within the normal pay period, the wages earned up to and including the lay off date are due and payable in accordance with Section 201. If there is a return date within the pay period and the employee is scheduled to return to work, the wages may be paid at the next regular pay day.

DLSE Opinion Letter 1996.05.30 and the DLSE Manual thus establish that a temporary layoff with no specific return date within the normal pay period is a discharge within the meaning of § 201, requiring the immediate payment of accrued wages. Thus, the temporary furlough in March 2020 triggered the prompt payment requirement of § 201 because, at eight to twelve weeks, there was no specific return date within the normal pay period.

Hyatt disputes the persuasiveness of the DLSE opinion letter, but we have explained that "[t]he DLSE's opinion letters, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may

properly resort for guidance." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 958 (9th Cir. 2013) (quoting *Brinker*, 273 P.3d at 529 n.11). The California Supreme Court also has stated that,

> so long as we exercise our independent judgment, we may consider the DLSE's interpretation and the reasons the DLSE proffered in support of it, and we may adopt the DLSE's interpretation as our own if we are persuaded that it is correct. And, in doing so, we may take into consideration the DLSE's expertise and special competence, as well as the fact that the DLSE Manual is a formal compilation that evidences considerable deliberation at the highest policymaking level of the agency.

*Alvarado*, 411 P.3d at 538 (citations omitted).

The DLSE's interpretation of § 201 in its May 30, 1996, Opinion Letter and its Policies and Interpretations Manual, and the reasons it proffered in support of its interpretation, are consistent with the purpose of the statute to protect workers. *See Smith*, 137 P.3d at 221 (stating that, "because of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay when it is due" (quoting *Ex parte Trombley*, 193 P.2d 734, 740 (Cal. 1948))); *id.* at 226 (stating that a broad construction of the term "discharge" in § 201 made sense "in light of the important public policy at stake"); *Kao v. Holiday*, 219 Cal. Rptr. 3d 580, 593 (Ct. App. 2017) ("'The plain purpose of sections 201 and 203 is to

compel the immediate payment of earned wages upon a discharge.' The prompt payment of an employee's earned wages is a fundamental public policy of this state." (quoting *Smith*, 137 P.3d at 228) (cleaned up)).

Taking into consideration the agency's "expertise and special competence," *Alvarado*, 411 P.3d at 538, we adopt the DLSE's interpretation of § 201. Although Hyatt's actions are understandable given the uncertainty during the early period of the pandemic, the March 2020 layoff was a discharge within the meaning of § 201, triggering the prompt payment requirement, because there was no specific return date within the normal pay period. We therefore reverse the district court's grant of Hyatt's motion and denial of Plaintiff's motion for summary judgment as to the claim that Hyatt violated the prompt payment provisions.

The district court granted summary judgment as to Plaintiffs' claim for waiting time penalties under § 203, declining to consider whether Hyatt had a good faith dispute regarding whether payment was due. *See Choate v. Celite Corp.*, 155 Cal. Rptr. 3d 915, 922 (Ct. App. 2013) (stating that "[s]ection 203 entitles a terminated employee to 'waiting time penalties' of up to 30 days' wages if the employer 'willfully fails to pay' the employee any outstanding wages immediately upon termination," and that "an employer's reasonable, good faith belief that wages are not owed may negate a finding of willfulness") (citations omitted). *But see Maldonado v. Epsilon Plastics, Inc.*, 232 Cal. Rptr. 3d 461, 479 (Ct. App. 2018) (stating that "a mere subjective good faith belief that wages were not due is insufficient; the test is whether there was an objectively reasonable, even if unsuccessful, defense to the payment of wages," and that the lack of an "objectively reasonable factual basis" for a defense "is sufficient to defeat [an

employer's] claim of good faith"). We reverse the grant of summary judgment as to waiting time penalties and remand for the district court to consider the willfulness issue in the first instance.

## II.   Complimentary Hotel Rooms

Plaintiffs contend that the complimentary hotel rooms to which employees were entitled constituted a nondiscretionary bonus that was a form of employee remuneration. Thus they argue that the value of the free rooms should have been included in the calculation of their regular rate of pay in determining their final wage and overtime payments.

"California follows the federal standard [the (FLSA)] for purposes of determining, under the Labor Code, what constitutes an employee's regular pay subject to an overtime rate." *Prachasaisoradej v. Ralphs Grocery Co.*, 165 P.3d 133, 147 n.14 (Cal. 2007) (citing *Huntington Mem. Hosp. v. Superior Ct*., 32 Cal. Rptr. 3d 373, 376–77 (Ct. App. 2005)). "'The FLSA is construed liberally in favor of employees; exemptions are to be narrowly construed against the employers seeking to assert them. . . .' The employer bears the burden of establishing that it qualifies for an exemption." *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016) (quoting *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005)).

Under the FLSA, "the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e). Among other exclusions, the regular rate does not include gifts or discretionary bonuses. *Id.* Plaintiffs contend that the hotel rooms are *non*discretionary bonuses that must be included in their

regular rate of pay.  Hyatt argues that the hotel rooms are gifts because they are provided for free or at a discount to their employees without a contractual obligation to do so and thus are not included in the regular rate of pay.

The hotel room policy, as described in the February 2014 Hyatt Regency Huntington Beach Resort & Spa Associate Handbook, provided as follows:[7]

> Full-time associates are eligible for twelve complimentary room nights per calendar year (*) and part-time associates are eligible for six complimentary room nights per calendar year (*) for personal travel at domestic Hyatt Hotels and participating Hyatt Hotels internationally.      *There is a pro-rated entitlement when becoming eligible after one year.  Associates may stay a maximum of three nights per anniversary year at any single hotel using the complimentary rate.

> Discretionary bonuses under the FLSA are defined as

> sums paid in recognition of services performed during a given period if (a) both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any

---

[7] A document produced by Hyatt entitled "Colleague Complimentary Rooms Rate Policy," similarly stated under "Description of Benefits," that "Full-time colleagues are eligible for twelve complimentary room nights per calendar year," and "Part-time colleagues are eligible for six complimentary room nights per calendar year."

prior contract, agreement, or promise causing the employee to expect such payments regularly. . . .

In order for a bonus to qualify for exclusion as a discretionary bonus . . . the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid. The sum, if any, to be paid as a bonus is determined by the employer without prior promise or agreement. The employee has no contract right, express or implied, to any amount. If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it.

29 C.F.R. § 778.211(a)–(b). "[A]ny bonus which is promised to employees upon hiring . . . would not be excluded from the regular rate under this provision of the Act." *Id.* § (c).

Gifts are described as "payments in the nature of gifts made at Christmas time or on other special occasions, as a reward for service, the amounts of which are not measured by or dependent on hours worked, production, or efficiency." 29 U.S.C. § 207(e)(1); 29 C.F.R. § 778.200(a)(1). To qualify for exclusion from the regular rate of pay,

the bonus must be actually a gift or in the nature of a gift. If it is measured by hours worked, production, or efficiency, the payment is geared to wages and hours during the bonus period and is no longer to be

> considered as in the nature of a gift. . . .
> Obviously, if the bonus is paid pursuant to
> contract (so that the employee has a legal
> right to the payment and could bring suit to
> enforce it), it is not in the nature of a gift.

29 C.F.R. § 778.212(b).

The district court concluded that the hotel rooms were "gifts . . . as a reward for service" within the meaning of 29 U.S.C. § 207(e)(1). We conclude that the hotel rooms are not gifts, but are nonetheless excludable from the regular rate of pay as "other similar payments" under 29 C.F.R. § 778.224.

In addition to gifts, the FLSA exempts the following from the definition of the "regular rate" of pay:

> payments made for occasional periods when
> no work is performed due to vacation,
> holiday, illness, failure of the employer to
> provide sufficient work, or other similar
> cause; reasonable payments for traveling
> expenses, or other expenses, incurred by an
> employee in the furtherance of his
> employer's interests and properly
> reimbursable by the employer; and *other
> similar payments* to an employee which are
> not made as compensation for his hours of
> employment.

29 U.S.C. § 207(e)(2) (emphasis added).

29 C.F.R. § 778.224 addresses the "other similar payments" exclusion, explaining that these payments are excluded from the regular rate because they "are not made

as compensation for [an employee's] hours of employment. Such payments do not depend on hours worked, services rendered, job performance, or other criteria that depend on the quality or quantity of the employee's work." 29 C.F.R. § 778.224(a). The regulation provides examples of "other similar payments," one of which is "Discounts on employer-provided retail goods and services, and tuition benefits (whether paid to an employee, an education provider, or a student loan program)." *Id.* § (b)(5). Hyatt's provision of free hotel rooms does not "depend on hours worked, services rendered, job performance, or other criteria that depend on the quality or quantity of the employee's work," and the complimentary hotel rooms certainly can be characterized as a discount on an employer-provided retail good or service.

Thus, although the hotel room policy has some characteristics of a nondiscretionary bonus – it "promises in advance," 29 C.F.R. § 778.211(b), that employees are entitled to the free hotel rooms and does not give Hyatt discretion whether to give them – the policy falls under the plain language of the regulation governing discounts on employer-provided retail goods and services. Plaintiffs further argue that the regulation states that, in order to be excluded from the regular rate, as "other similar payments," the "miscellaneous payments [that] are paid by an employer to an employee under peculiar circumstances . . . must . . . be 'similar' in character to the payments specifically described" in 29 U.S.C. § 207(e)(2). 28 C.F.R. § 778.224(a). The argument is that the complimentary hotel rooms are not similar in character to any of the payments described in the statute. They are not provided for "occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause," nor are they payments for expenses "incurred

by an employee in the furtherance of his employer's interests and properly reimbursable by the employer." 29 U.S.C. § 207(e)(2). Instead, they are given at regular intervals to every employee.

Nonetheless, the regulation states that discounts on employer-provided retail goods and services is an example of "other similar payments." 29 C.F.R. § 778.224(b)(5). We therefore affirm the district court's conclusion that the value of the complimentary hotel rooms was properly excluded from the calculation of Plaintiffs' regular rate of pay.

## CONCLUSION

The DLSE's opinion letter and its Policies and Interpretations Manual establish that a temporary layoff without a specific return date within the normal pay period is a discharge that triggers the prompt payments provision of § 201. Hyatt thus should have paid the accrued vacation pay at the initial layoff in March 2020 because the temporary layoff was longer than the normal pay period and there was no specific return date. We therefore reverse the district court's grant of summary judgment in favor of Hyatt as to the vacation pay and waiting time penalties claims and remand for the court to consider whether Hyatt acted willfully within the meaning of § 203. We also reverse the grant of summary judgment as to Plaintiffs' PAGA and unfair competition claims, which the district court dismissed as derivative of Plaintiffs' claims under the Labor Code. We affirm the grant of summary judgment as to the complimentary hotel room policy.

The parties shall pay their own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**